**STATE of Missouri, Plaintiff–Respondent,**

v.

**James W. DILLARD, Defendant–Appellant.**

No. 26008.

Missouri Court of Appeals,
Southern District,
Division Two.

March 22, 2005.

Irene Karns, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

James Dillard ("Defendant") was charged by information with two counts of committing the class C felony of possession of a controlled substance (methamphetamine and more than 35 grams of marijuana) in violation of § 195.202.[1] The information was later amended to allege that Defendant was a prior and persistent drug offender and that these offenses could be treated as class A felonies for purposes of sentencing. *See* § 195.275; § 195.285.[2] After a bench trial, Defendant was convicted on both counts and sentenced to concurrent terms of 25 years in prison.

Defendant's appeal presents three points for decision. He contends the trial court erred by: (1) denying Defendant's motion to suppress and admitting drugs, paraphernalia and his inculpatory statements obtained as the result of an unconstitutional search and seizure; (2) denying Defendant his constitutional right to a jury trial; and (3) imposing sentences so grossly disproportionate to the offenses he committed that they violate the federal and state constitutional proscriptions against cruel and unusual punishment found in the Eighth Amendment and art. I, § 21. We affirm.

### Facts and Procedural History

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. In this appeal, we consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Cravens*, 132 S.W.3d 919, 921 (Mo.App.2004); *State v. Campbell*, 122 S.W.3d 736, 737 (Mo.App. 2004). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are summarized below.

On January 11, 2002, Deputy Raymond Koch ("Deputy Koch") of the Wayne County, Missouri, Sheriff's Department received an anonymous telephone tip. The caller stated Defendant was driving a white van from the St. Louis area to Wayne County, and the van might contain drugs. Acting on the tip, Deputy Koch and Sergeant Jamie Garris ("Sergeant Garris"), a Wayne County drug task force officer, drove in Deputy Koch's truck to a location on Highway 67 near the Wayne County–Madison County line. The two officers parked beside the road and began observing southbound traffic. About 20

---

1. All references to statutes are to RSMo (2000).

2. The amended information also alleged Defendant was a prior and persistent offender because he had two prior felony convictions. *See* § 558.016.

minutes later, they were joined at this location by Missouri State Highway Patrol Corporal Michael Carson ("Corporal Carson") and Williamsville Police Officer Kevin Henson ("Officer Henson"), who arrived together in Corporal Carson's patrol car.

At approximately 8:00 p.m., a white van pulling a box trailer passed by the officers. This was the first white van the officers had seen since they arrived to conduct surveillance. The van appeared to be exceeding the posted speed limit of 60 miles per hour. Both police vehicles entered the southbound lanes of Highway 67 and began to follow the van. Deputy Koch paced the van and determined that it was speeding, according to the speedometer in his truck. Corporal Carson, who was behind Deputy Koch, used the radar unit in the highway patrol car to verify that the van was traveling approximately 70 miles per hour. Deputy Koch also ran a check on the trailer's license plates and learned they had expired. He activated his emergency lights to pull the van over and also noticed the trailer's brake lights were not functioning.

Defendant, who was driving the van, pulled onto the shoulder of Highway 67 and stopped. Because it was a Friday night, traffic was heavy. Deputy Koch parked his truck in front of the van, and Corporal Carson parked his patrol car behind the van. Both Deputy Koch and Corporal Carson were familiar with Defendant from prior encounters they had with him. Deputy Koch approached the driver's side of the van and asked Defendant for his driver's license and proof of insurance. Defendant started looking in his checkbook and seemed to be having problems finding the items Deputy Koch asked to see. Defendant's verbal responses also were "slow." While Defendant fumbled through some papers, Deputy Koch looked inside the van for officer safety reasons and noticed that a cup holder on top of the vehicle's engine compartment contained a beer bottle. By that time, Corporal Carson had approached the driver's door of the van, holding a flashlight to illuminate the scene. Suspecting Defendant had been drinking and driving, Deputy Koch asked Defendant to get out of the van.

As Defendant exited his vehicle, Corporal Carson saw a small piece of aluminum foil fall out of the van and land on the ground at the edge of the highway. Corporal Carson recognized the tin foil as a type of drug paraphernalia commonly used to smoke methamphetamine. After the tin foil had lain there a moment, Defendant put his foot on top of it. Defendant was standing on the edge of the traveled portion of the highway, which was dangerous due to the heavy traffic volume. After Defendant twice refused to remove his foot from the foil, Corporal Carson took Defendant by the arm and moved him onto the shoulder of the road in front of the van.

Deputy Koch picked up the tin foil. It was a 2–inch by 2–inch piece of folded tin foil. On both sides of one end, there was a burnt black residue. There also was a brown substance on the outside of the foil. From prior training, experience and arrests, Deputy Koch and Corporal Carson recognized this foil packet as a type of drug paraphernalia commonly used to smoke methamphetamine. When the folded square of foil was opened, it contained what Corporal Carson believed to be methamphetamine. Deputy Garris observed that the tin foil also had a burnt residue on the inside, which was consistent with the use of methamphetamine.

Defendant was placed under arrest, handcuffed and given his *Miranda* warn-

ing.[3] Corporal Carson then searched Defendant and found a clear plastic baggie containing an off-white powdery substance in his right-front pants' pocket. Deputy Koch searched the interior of the van and found an ashtray containing marijuana cigarette butts, a pair of forceps holding a burnt marijuana cigarette, a complete roll of aluminum foil under the driver's seat, and two plastic pens with the insides removed and what appeared to be burnt methamphetamine residue on them.

Because Defendant's van and trailer were parked in a dangerous position on the roadside, Officer Henson drove the van to a baseball field in Greenville, Missouri, so a more complete search could be conducted. Defendant was transported to the same location by Corporal Carson. During the trip, Defendant said he did not want to go back to court and offered to cooperate by providing the police with information.[4] In response to questioning by Corporal Carson, Defendant admitted there was one-quarter pound of marijuana in a travel mug behind the driver's seat of his van. Once Corporal Carson arrived at the baseball field, he recovered the mug from the van. Later that evening, Defendant gave a written statement to Corporal Carson at the Wayne County Sheriff's Office. In the statement, Defendant admitted buying one gram of methamphetamine and one-quarter pound of marijuana from an individual in St. Louis that day. Defendant also admitted that he had used "one line" of methamphetamine after he bought it.

Laboratory tests were conducted on the items seized from Defendant and his vehicle. The results included the following

findings: (1) the aluminum foil packet that fell out of Defendant's van contained about one-tenth of a gram of methamphetamine; (2) the plastic baggie taken from his pants' pocket contained seven-tenths of a gram of methamphetamine; (3) the travel mug contained 104.30 grams of marijuana.

Additional facts necessary to the disposition of the case are included below as we address Defendant's three points on appeal.

## Discussion and Decision

### Point I

■ Prior to trial, Defendant filed a motion to suppress the drugs, paraphernalia and the inculpatory statements he made to police after he was arrested. The motion alleged this evidence was seized in violation of Defendant's Fourth Amendment rights because it was not obtained via a search warrant or the existence of circumstances authorizing a warrantless search. The trial court conducted an evidentiary hearing at which Corporal Carson and Defendant testified. The court denied the motion to suppress. During the trial, Defendant renewed his constitutional objection, which was overruled.

In Defendant's first point, he contends these rulings were error because seizure of the foil packet was not justified as part of the traffic stop, the investigative stop to determine whether Defendant was driving while intoxicated or pursuant to the plain view doctrine. He also argues that all of the other post-arrest evidence should have been suppressed as fruits of an unlawful search. Thus, the linchpin of Defendant's

---

**3.** See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** At the time of Defendant's arrest on January 11, 2002, he was on probation for a prior

drug conviction. The judge had suspended execution of the 12–year sentence that had been imposed.

argument is that the foil packet was unconstitutionally seized.

■ In reviewing a trial court's ruling on a motion to suppress, our inquiry is limited to determining whether the decision is supported by substantial evidence. *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). We consider the evidence presented at the pretrial hearing, as well as any additional evidence presented at trial. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). The evidence presented on a motion to suppress is viewed in a light most favorable to the ruling. *State v. Williams,* 97 S.W.3d 462, 469 (Mo. banc 2003). Therefore, we consider only the facts and reasonable inferences derived therefrom favorable to the ruling. *State v. Galazin,* 58 S.W.3d 500, 507 (Mo. banc 2001). Evidence and inferences contrary to the trial court's order are disregarded. *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998). We defer to the trial court's factual findings and credibility determinations, but we review questions of law *de novo. State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998). We will not reverse the trial court's ruling on a motion to suppress unless the decision is clearly erroneous, leaving this court with a definite and firm impression that a mistake has been made. *Williams,* 97 S.W.3d at 469; *State v. Birmingham,* 132 S.W.3d 318, 321 (Mo.App.2004). Viewed in a light most favorable to the trial court's order denying Defendant's motion to suppress, we conclude the ruling is supported by substantial evidence because the foil packet was properly seized by police pursuant to the plain view doctrine.

■ The Fourth Amendment to the United States Constitution guarantees all citizens the right to be free from unreasonable searches and seizures. *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004). This reasonableness requirement has been interpreted to mean that a search usually must be based on probable cause and executed pursuant to a warrant. *State v. Gantt,* 87 S.W.3d 330, 332 (Mo. App.2002). Warrantless searches are presumptively invalid. *State v. Galazin,* 58 S.W.3d 500, 505 (Mo. banc 2001). Accordingly, if a search is conducted without a warrant, the search must fall within one of the recognized exceptions to the probable cause and warrant requirements in order to be valid. *Gantt,* 87 S.W.3d at 333.

■ We begin by noting that a routine traffic stop based on the violation of state traffic laws is a justifiable warrantless seizure under the Fourth Amendment. *Barks,* 128 S.W.3d at 516. Since police had a reasonable suspicion that Defendant had violated state traffic laws, the initial stop was a constitutional seizure. *See City of Springfield v. Hampton,* 150 S.W.3d 322, 326 (Mo.App.2004) (officer's observation of vehicle exceeding the speed limit provided reasonable suspicion that the driver had committed a traffic violation and authorized the ensuing traffic stop).

■ Once Deputy Koch interacted with Defendant and observed the beer bottle in the van, it was permissible to extend the traffic stop to investigate whether Defendant had been drinking and driving. *See State v. Day,* 87 S.W.3d 51, 54 (Mo.App. 2002) (traffic stop can extend beyond the time necessary to effect its initial purpose if specific, articulable facts create an objectively reasonable suspicion the driver is involved in criminal activity). Defendant was asked to exit his vehicle as a part of this new investigation. While doing so, the foil packet fell from the van, where it was plainly visible to Corporal Carson until Defendant placed his foot on top of it. Seizure of the foil packet without a warrant was proper because it was in plain view.

The plain view doctrine is one of the recognized exceptions to the warrant requirement imposed by the Fourth Amendment to the United States Constitution. *See State v. Rutter,* 93 S.W.3d 714, 724 (Mo. banc 2002); *State v. Courtney,* 102 S.W.3d 81, 87 (Mo.App.2003); *Gantt,* 87 S.W.3d at 333. This doctrine applies when: (1) the officer is lawfully located in a place from which the object can be plainly seen; (2) the officer has a lawful right of access to the object itself; and (3) the incriminating character of the object is immediately apparent to the seizing officer. *State v. Miller,* 894 S.W.2d 649, 656 (Mo. banc 1995); *see also Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). We find that each element necessary to apply the plain view doctrine was present here.

First, Corporal Carson and Deputy Koch were lawfully located on Highway 67, a public road, carrying out their duties of enforcing state traffic laws when the foil packet fell on the ground at the edge of the traveled portion of the roadway. The foil packet was plainly visible to Corporal Carson as soon as it fell out of the van.

Second, Corporal Carson and Deputy Koch had a lawful right to view the foil packet once it fell from the van and landed on the ground. *See State v. Howard,* 973 S.W.2d 902, 909 (Mo.App.1998) (bag of marijuana that fell from glove compartment when it was opened by passenger was in officer's plain view); *State v. Bibb,* 922 S.W.2d 798, 802 (Mo.App.1996) (where police were at the site of frequent drug transactions and observed defendant drop two off-white chunks, pick them up and throw them into the vehicle's open window, the contraband was within plain view). "Although the law limits searches during an investigative stop, it does not demand that the police turn a blind eye to evidence discovered in plain view or by plain feel during such a stop." *State v. Courtney,* 102 S.W.3d 81, 88 (Mo.App. 2003).

Third, the incriminating character of the foil packet was immediately apparent to Corporal Carson and Deputy Koch. As soon as the piece of foil fell to the ground, Corporal Carson recognized the object as a type of drug paraphernalia commonly used to smoke methamphetamine. When Deputy Koch picked up the tin foil, he observed that it was a 2–inch by 2–inch piece of folded tin foil with a burnt black residue on the exterior portion of both sides of one end. There also was a brown substance on the outside of the foil. Deputy Koch also recognized this foil packet as a type of drug paraphernalia commonly used to smoke methamphetamine. These officers' knowledge of how methamphetamine is ingested, based on their prior training and experience, is a relevant consideration in determining whether the incriminating character of the foil packet as contraband was immediately apparent. *See State v. Rushing,* 935 S.W.2d 30, 33 (Mo. banc 1996).

Citing *State v. Courtney,* 102 S.W.3d 81, 85 (Mo.App.2003), Defendant argues that he had a reasonable expectation of privacy in the piece of foil even after it fell from the van. We disagree for two reasons.

First, *Courtney* teaches that "[w]hen a defendant stores drugs in a closed, opaque container that conceals the contraband from plain view, he can demonstrate an objectively reasonable expectation of privacy." *Id.* at 85. This principle has no application here because the size, shape, folding and burnt exterior of the foil packet identified it as a type of drug paraphernalia used to smoke methamphetamine. In *Courtney,* nothing about the outward appearance of the hollowed-out bolt that fell from the defendant's pants

betrayed the fact that methamphetamine was concealed inside the bolt. *Id.* at 86.

Second, we reject Defendant's argument that he could create an objectively reasonable expectation of privacy in the foil packet by covering it with his foot once it fell to the ground. Defendant was standing in a dangerous location next to the traveled portion of a busy highway with his foot on the foil. He could not have remained there without jeopardizing the safety of himself and the officers standing beside him. When Defendant was moved to a safer location on the shoulder in front of his van, the foil packet was once again in the officers' plain view. While Defendant may well have manifested his subjective intention to hide the foil packet from the officers, we conclude Defendant could not have had any objectively reasonable expectation of privacy under these circumstances. Therefore, *Courtney* is distinguishable and does not support Defendant's argument. Point I is denied.

### Point II

▮ In Defendant's second point, he claims the trial court committed plain error in denying his constitutional right to a jury trial. Defendant contends the record does not show with unmistakable clarity that he knowingly, intelligently and voluntarily waived this right, resulting in manifest injustice. Defendant asks us to review for plain error pursuant to Rule 30.20.[5]

▮ Plain error review is discretionary. *See State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App.2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). For relief under the plain error rule to be warranted, a defendant must demonstrate "the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App.2000).

▮ A request for plain error review requires us to go through a two-step analysis. *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999). First, we determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App.2004). We must decide "whether, on the face of the claim, plain error has, in fact, occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001); *State v. Brown,* 97 S.W.3d 97, 100 (Mo.App.2002). Only if facially substantial grounds are found to exist do we then move to the second step of this analysis and determine whether a manifest injustice or miscarriage of justice has actually occurred. *Stanley,* 124 S.W.3d at 77. Therefore, we begin our analysis by considering whether Defendant's assertion of plain error is facially substantial.

▮ A criminal defendant's right to have a jury decide the issue of guilt or innocence is guaranteed by the federal and state constitutions. U.S. CONST. amend. VI and XIV; Mo. CONST. art. I, § 22(a); *State v. Mitchell,* 145 S.W.3d 21, 23 (Mo.App.2004). This right can be waived if the waiver is voluntarily, knowingly and intelligently made. *State v. Sharp,* 533 S.W.2d 601, 605 (Mo. banc 1976); *Mitchell,* 145 S.W.3d at 23. Here, Defendant was charged with committing two felonies. Rule 27.01(b) provides that "[i]n felony cases such waiver by the defendant shall be made in open court and entered of record." This proviso is meant to ensure that the waiver is voluntarily, knowingly

---

**5.** All references to rules are to the Missouri Rules of Criminal Procedure 2004.

and intelligently made. *State v. Carter,* 104 S.W.3d 413, 415 (Mo.App.2003). Such a waiver "must appear from the record with unmistakable clarity." *State v. Bibb,* 702 S.W.2d 462, 466 (Mo. banc 1985); *Mitchell,* 145 S.W.3d at 23.

Just prior to commencement of the trial, the court held a pretrial conference with the attorneys. Defendant was present as well. During the conference, defense counsel announced that Defendant intended to waive a jury. The court reminded counsel that any waiver needed to be done in open court, on the record and in writing. Immediately after the pretrial conference was concluded, the trial judge asked for the written waiver on the record, and defense counsel provided it to the court. This document was signed by Defendant and stated that "I do give up my right to have a trial by jury" and "it is my desire to have a trial before the Court and to **waive my right to a trial by jury.**" (Bold emphasis in original.) Despite the foregoing statements in the written waiver, however, Defendant claims he did not knowingly, intelligently and voluntarily waive his right to a jury trial, based on certain statements he made on the record when the written waiver was provided to the court.

As we noted earlier in our opinion, Corporal Carson was the only police officer who testified at the hearing on the motion to suppress, and the trial court denied the motion. Just after the pretrial conference concluded, the written waiver was handed to the court. The following colloquy then took place among defense counsel Walsh, prosecutor Kiser, the trial court and Defendant:

Mr. Walsh: [Defendant's] concern is Judge, speaking in general, and what upsets him is that he feels that at least one of the law enforcement officers here has committed perjury from a previous hearing and I assured him that I would get a chance to cross examine through me. The officer, his waiver of trial by jury is conditioned upon, and he had asked me to subpoena Deputy Ray, K–O–C–H, is that like Cook?

Mr. Kiser: Yes.

Mr. Walsh: And Mr. Kiser assured me that Mr. Koch will be here . . . and he will call him . . . in his case in chief he had told me and that was the foremost concern to [Defendant].

. . . .

The Court: Is he going to be here?

Mr. Kiser: Mr. Koch will be here. But as far as conditions on waiver of the jury, that's an unconditional waiver.

The Court: Has your client signed it?

Mr. Walsh: Yes sir. And I'm handing you the waiver of trial by jury. That's just a form that I use. You may have some additional questions Judge, I don't know.

The Court: Let the record reflect the waiver of trial by jury is signed by the defendant. Is that your signature Mr. Dillard?

Defendant: Yes.

The Court: That has been filed. . . . Do you wish to ask your client some questions as to his rights and under the Constitution?

Mr. Kiser: Koch is here.

. . . .

Mr. Walsh: Briefly Judge if it please the Court. Mr. Dillard you and I have talked about the issues of this lawsuit and what the issues are, have we not?

Defendant: Yes sir.

Mr. Walsh: And based on our talks by phone and then in person today, is it your desire to waive the jury and let

those issues be decided by Judge Price?

Defendant: Yes sir.

Mr. Walsh: What is important to you is that you have the right to confront witnesses, is it not?

Defendant: Yes sir.

Mr. Walsh: Especially Deputy Koch and Sargent [sic] Carson?

Defendant: Yes sir.

The Court: Further, any witness that takes the stand on behalf of the state your attorney will have an opportunity to cross examine that witness.

Defendant: Okay.

At this point, Defendant said he was curious why Deputy Koch had not testified at the suppression hearing because Defendant believed Deputy Koch's testimony would be inconsistent with that of Corporal Carson. The judge explained that he had not heard Deputy Koch's testimony yet, but defense counsel would have a right to cross-examine the witness. Defendant then stated, "Exactly but I don't understand why I had to sign a waiver of jury trial before those issues are heard." The court immediately reminded Defendant that he had to knowingly, voluntarily and intelligently waive his constitutional right to a jury trial in open court and on the record. The following colloquy then occurred between the trial judge and Defendant:

The Court: .... How far in school have you completed?

Defendant: One year of college.

The Court: One year of college. You can read and write?

Defendant: Yes.

The Court: Have you had sufficient time to go over this case with your attorney?

Defendant: Yes. But this issue has not been raised and I'm not satisfied with

the outcome of the motion to suppress hearing because of that.

The Court: Your attorney as I recall, has preserved all those matters for [the] appellate record.... My concern is that you knowingly, voluntarily and intelligently waive your right to a jury trial?

Defendant: Yes.

The Court: And you had signed the agreement to that?

Defendant: Yes.

The Court: You are not under the influence of alcohol or any medication today, are you sir?

Defendant: No sir.

The Court: You know what you're doing?

Defendant: Yes sir.

The Court: You appear to. You appear to be very alert and intelligent Mr. Dillard. So the Court is going to accept your waiver of jury trial and proceed with a court trial without a jury.

Defendant contends that he mistakenly believed he had to waive his right to a trial by a jury in order to get a hearing on issues raised in his motion to suppress. We disagree with his interpretation of the record.

Defendant was dissatisfied with the trial court's decision on the motion to suppress because Deputy Koch had not testified at the suppression hearing. Defendant was concerned because he wanted his attorney to have an opportunity to point out inconsistencies in the account of events given by Deputy Koch and Corporal Carson. During the hearing on the waiver of jury trial issue, Defendant was told: (1) Deputy Koch was going to testify at the trial itself; (2) defense counsel would have an opportunity to cross-examine Deputy Koch; and

(3) Defendant could challenge the ruling on the motion to suppress on appeal. After being told these things, Defendant reiterated on the record that he was willingly waiving his right to a jury trial. At no time did he express a desire to have a jury decide the issue of his guilt or innocence.

Based on our review of the written waiver of jury trial and the transcript, we conclude that Defendant did knowingly, voluntarily and intelligently waive his right to a jury trial in court and on the record with unmistakable clarity. Therefore, we decline to review Defendant's second point for plain error because he has failed to present facially substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. Point II is denied.

### Point III

■■■ In Defendant's third point, he contends the 25-year concurrent sentences imposed by the trial court were so grossly disproportionate to the offenses of possession of methamphetamine and marijuana that the sentences violate the federal and state constitutional proscriptions against cruel and unusual punishment found in the Eighth Amendment and art. I, § 21. Defendant acknowledges that he did not raise this constitutional issue at sentencing, but he asks for plain error review pursuant to Rule 30.20 because he claims the lengthy sentences are unconstitutional and, therefore, manifestly unjust. Once again, our task is to determine whether Defendant's asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *See State v. Stanley*, 124 S.W.3d 70, 77 (Mo.App.2004).

When Defendant was first charged with drug possession, both offenses in the information were described as class C felonies. A class C felony has a maximum range of punishment of seven years. *See* § 558.011.1(3). In the amended information, Defendant was alleged to be a prior and persistent drug offender, which allowed these offenses to be treated as class A felonies for sentencing purposes. *See* § 195.275; § 195.285. Prior to trial, the court made a finding beyond a reasonable doubt that Defendant was a prior and persistent drug offender pursuant to § 195.275.[6] The maximum range of punishment for a class A felony is life imprisonment. *See* § 558.011.1(1). The sentences imposed by the trial court were within the allowable range for a class A felony. Therefore, we perceive Defendant's argument as a constitutional attack on the validity of § 195.285, which authorizes enhanced punishment for recidivist drug offenders.

■■■ We first consider whether we have jurisdiction to decide this issue. The Missouri Supreme Court has exclusive jurisdiction over appeals involving the constitutional validity of a state statute. *See* Mo. Const. art. V, § 3; *State v. Condict*, 65 S.W.3d 6, 16 (Mo.App.2001). "The mere assertion that a statute is unconstitutional, however, does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial, and not merely colorable." *State v. Wiles*, 26 S.W.3d 436, 443 n. 4 (Mo.App.2000). A constitutional claim is merely colorable if our preliminary inquiry discloses that the contention is so obviously unsubstantial and insufficient, in fact or in law, as to be plainly without merit. *State v. Stone*, 926

---

**6.** The State's evidence showed that on August 4, 1989, Defendant pled guilty in the Circuit Court of St. Louis County, Missouri, to two felonies for selling marijuana and cocaine.

On April 6, 2000, Defendant pled guilty in the Circuit Court of Wayne County, Missouri, to a felony for producing more than five grams of marijuana.

S.W.2d 895, 898 (Mo.App.1996). Because we determine that Defendant's constitutional challenge is merely colorable, this court has jurisdiction.

The Eighth Amendment proscription against the infliction of "cruel and unusual punishments" has been construed to prohibit a term of years sentence that is grossly disportionate to the severity of the crime. *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Eighth Amendment applies to the states via the Fourteenth Amendment. *See Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In *Solem,* the Court held that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the commission of the same crime in other jurisdictions." *Solem,* 463 U.S. at 292, 103 S.Ct. 3001. The intrajurisdictional and interjurisdictional analyses in the second and third factors, however, need only be undertaken "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin v. Michigan,* 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment); *Ewing v. California,* 538 U.S. 11, 23–24, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (plurality opinion).

Our threshold comparison of the crimes Defendant committed—possession of methamphetamine and more than 35 grams of marijuana—with the concurrent 25–year sentences imposed upon Defendant do not lead us to infer that his punishment is so grossly disportionate to the offenses he committed as to violate the Eighth Amendment.

In *Rummel,* the Supreme Court addressed an Eighth Amendment challenge to Texas' recidivist statute, which required the imposition of a life sentence upon a third conviction for a noncapital offense. *Rummel,* 445 U.S. at 264, 100 S.Ct. 1133. Rummel had been sentenced to life imprisonment after being convicted of the felony of obtaining $120.75 by false pretenses. *Id.* at 266, 100 S.Ct. 1133. His two prior felonies were fraudulent use of a credit card to obtain $80 worth of goods or services and passing a forged check in the amount of $28.36. *Id.* at 265, 100 S.Ct. 1133. In analyzing Rummel's Eighth Amendment claim, the Court pointed out that "successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133. The Court also acknowledged that states have an interest in dealing more harshly with those persons who, by their repeated criminal acts, have shown "that they are simply incapable of conforming to the norms of society as established by its criminal law." *Id.* at 276, 100 S.Ct. 1133. The Court elaborated on this theme later in its opinion:

> [G]iven Rummel's record, Texas was not required to treat him in the same manner as it might treat him were this his first "petty property offense." Having twice imprisoned him for felonies, Texas was entitled to place upon Rummel the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State. The purpose of a recidivist statute such as that involved here is not to simplify the task of prosecutors, judges, or juries. Its primary goals are

to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. *Id.* at 284, 100 S.Ct. 1133. Finally, the fact the Rummel would be eligible for parole in as little as 12 years had to be considered in assessing the validity of his Eighth Amendment challenge to the Texas recidivist statute. *Id.* at 280–81, 100 S.Ct. 1133. After considering all of these factors, the Court held that Rummel's mandatory life sentence did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at 285, 100 S.Ct. 1133.

Here, Defendant did not receive the maximum sentence of life imprisonment that could have been imposed upon him as a persistent drug offender. Indeed, he did not even receive the maximum 30–year term allowable for a class A felony. He also received concurrent, rather than consecutive, sentences. Defendant's four felony offenses demonstrate a persistent inability to conform his behavior to the social norms prescribed by the criminal laws of this state dealing with the possession and sale of controlled substances. It is also worthy of note that his earlier offenses involved the sale and production of drugs, rather than simple possession. The fact that Defendant's offenses all involve drugs

makes his prior convictions much more serious than those in *Rummel.* As Justice Kennedy pointed out in *Harmelin:*

> Possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." Petitioner's suggestion that his crime was nonviolent and victimless, echoed by the dissent ... is false to the point of absurdity. To the contrary, petitioner's crime threatened to cause grave harm to society. Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

*Harmelin,* 501 U.S. at 1002, 111 S.Ct. 2680 (citations omitted). Finally, Defendant's convictions for possession of methamphetamine and marijuana are not offenses for which imprisonment without the possibility of probation or parole is mandated. *See, e.g.,* § 195.291; § 195.292; § 192.295; § 195.296. Therefore, it appears Defendant could become eligible for parole. *See* § 558.011.4(c); *Rowland v. State,* 129 S.W.3d 507, 511 (Mo.App.2004). We believe *Rummel* is dispositive on this point and compels the conclusion that Defendant's sentences do not constitute the infliction of cruel and unusual punishment that is proscribed by the Eighth Amendment.[7]

---

7. In reaching this conclusion, we have given careful consideration to Defendant's contention that *Solem* supports his argument, but we find this case factually distinguishable for two reasons. First, Helm was sentenced to life imprisonment without the possibility of parole. *Solem,* 463 U.S. at 281–82, 103 S.Ct. 3001. Second, none of Helm's offenses involves the possession or sale of drugs. *Id.* at 279–81, 103 S.Ct. 3001. In our view, *Rummel,* not *Solem,* is the controlling decision in the case at bar.

Our conclusion that the sentences imposed upon Defendant are not so grossly disportionate as to offend the federal constitution forecloses Defendant's parallel argument that he is entitled to relief under our state constitution. We apply the same "gross disproportionality" standard in determining whether there has been a violation of art. I, § 21(a) of the Missouri Constitution. *See State v. Lee*, 841 S.W.2d 648, 654–55 (Mo. banc 1992). In *State v. Hill*, 827 S.W.2d 196 (Mo. banc 1992), the defendant was convicted of trafficking drugs in the first degree and sentenced to a term of 30 years without probation or parole. Our Supreme Court held that the defendant's sentence did not violate art. I, § 21(a). *Id.* at 198. In so holding, the Court stated that "[d]rug trafficking is a serious matter, and the legislature could properly mandate a severe sentence. We reject the cruel and unusual punishment claim." *Id.* We reach the same conclusion here because Defendant has a more extensive criminal history than the defendant in *Hill*, and Defendant's prior crimes include felony convictions for selling and producing drugs. His 25–year concurrent sentences do not violate art. I, § 21(a).

Therefore, we decline to review Defendant's third point for plain error because he has failed to present facially substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. Point III is denied.

■ Although the foregoing discussion disposes of all of the issues presented by Defendant's appeal, one further matter requires our attention. The judgment contained in the record on appeal appears to contain two clerical errors. First, it incorrectly indicates that Defendant was only found to be a prior and persistent offender. The transcript, however, demonstrates the trial judge also made a finding, on the record and beyond a reasonable doubt, that Defendant was a prior and persistent drug offender. Defendant was sentenced based on this finding.[8] Second, Rule 29.07(c) requires that a judgment of conviction set forth the sentence imposed. The judgment also fails to recite the sentences imposed upon Defendant, even though they were announced in open court and recorded in a docket entry. "The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor*, 123 S.W.3d 924, 931 (Mo. App.2004). Rule 29.12 authorizes a trial court to correct clerical errors in the judgment that result from oversight or omission. *Id.* Accordingly, while we affirm Defendant's convictions and sentences, we must remand this case with instructions to the trial court to enter an amended written judgment reflecting the judgment and sentences as they were announced by the trial judge in open court.

SHRUM and BARNEY, JJ., Concur.

---

8. Because Defendant was found to be a prior and persistent drug offender, the offenses he committed could be treated as class A felonies for sentencing purposes. *See* § 195.285.2. Defendant's 25–year concurrent sentences fall within the permissible range of punishment for a class A felony. *See* § 558.011.1(1). The finding that Defendant was a persistent offender as defined by § 558.016.3, however, would only authorize the trial court to sentence Defendant to a maximum 20–year term of imprisonment. *See* § 558.016.7(3).