**STATE of Missouri, Plaintiff–Respondent,**

v.

**Nelson Cruz BONES, Defendant–Appellant.**

No. 28011.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 20, 2007.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Jaime Wilson Corman, Assistant Attorney General, for respondent.

PHILLIP R. GARRISON, Judge.

This is an appeal from a jury conviction for the class B felony of trafficking in the second degree, a violation of Section 195.223,[1] for which Nelson Cruz Bones ("Defendant") was sentenced as a prior and persistent offender to eight years in the department of corrections to be served in the long term drug treatment program.

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

Defendant appeals this conviction contending that the trial court erred in overruling his motion to suppress and objections to the admission of the methamphetamine evidence at trial.

Officer Travis Walthall ("Officer Walthall"), a K–9 patrol officer with the Joplin, Missouri, Police Department, was patrolling around 2:00 a.m. on May 28, 2005, when he saw a vehicle make an improper left hand turn. Officer Walthall initiated a traffic stop and upon approaching the vehicle recognized the driver as Defendant, who he had previously encountered while assisting the special response team (a SWAT team) in executing search warrants for narcotics.

Defendant cooperated with Officer Walthall during the traffic stop by giving him his license and title of the vehicle. However, Defendant did not have any proof of insurance and he told Officer Walthall the reason was he had just purchased the vehicle and had not yet obtained the insurance paperwork. After running Defendant's name and vehicle information through the computer to check for warrants and license status, Officer Walthall called for a backup officer.[2] When backup arrived, Officer Walthall returned to Defendant's vehicle and asked Defendant to step out of the vehicle.

Being concerned that Defendant might have a weapon, Officer Walthall asked Defendant to put his hands behind his back so he could pat down Defendant down. Prior to the pat down search, Officer Walthall asked Defendant if he had anything that was illegal and Defendant told him he just had cash. Officer Walthall began to pat down Defendant's front waist area when he felt a hard and long object. Thinking that this object could be a weap-

on, Officer Walthall reached for a pair of handcuffs, at which point, Defendant began acting anxious, pulled away from the officer, and repeated, "I just have cash." Before Officer Walthall could get out his handcuffs, Defendant began running away. While running away, an object fell from Defendant's waistband. The object was a long, circular, dark colored, plastic cylinder covered with a beer bottle cooler sleeve.

Officer Walthall and other backup officers pursued Defendant on foot, and apprehended him within approximately fifteen to twenty minutes. The discarded cylindrical object was obtained near the scene of the traffic stop and opened by Officer Walthall. Inside the cylindrical container there were three plastic bags containing a white rock-like substance, which a field test identified as methamphetamine. Later testing substantiated the field test and showed the cylinder contained 144.12 grams of the illegal substance.

Defendant was charged as a prior and persistent offender by amended information with the class B felony of trafficking in the second degree. Defendant was convicted and sentenced to eight years in the Department of Corrections with his sentence to be served in the long term drug treatment program. This appeal followed.

In his sole point on appeal, Defendant claims the trial court erred in overruling his motion to suppress and objections to the admission of the methamphetamine evidence at trial because it was obtained in violation of the Fourth Amendment to the United States Constitution. Specifically, Defendant claims the methamphetamine evidence should have been suppressed and

---

**2.** The check of Defendant's license revealed that there were no outstanding warrants out for him.

excluded from trial because he was unlawfully detained when he was told to exit his vehicle and because he was unlawfully searched by Officer Walthall.

Prior to trial, Defendant filed a motion to suppress the methamphetamine evidence alleging that it was the result of an illegal detention and search. The trial court held an evidentiary hearing on the motion during which Officer Walthall testified. The trial court denied Defendant's motion to suppress. During trial, Defendant objected to the admission of the methamphetamine evidence for the same reasons stated in his motion to suppress. Those objections were overruled.

 "In reviewing a trial court's ruling on a motion to suppress, our inquiry is limited to determining whether the decision is supported by substantial evidence." *State v. Dillard*, 158 S.W.3d 291, 297 (Mo. App. S.D.2005). We view the evidence presented at the pretrial hearing, as well as any additional evidence presented at trial, in the light most favorable to the ruling. *Id.* "Evidence and inferences contrary to the trial court's order are disregarded." *State v. Newberry*, 157 S.W.3d 387, 397 (Mo.App. S.D.2005). "We defer to the trial court's factual findings and credibility determinations, but we review questions of law *de novo.*" *Id.* "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo.*" *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). We will only reverse a trial court's ruling on a motion to suppress if "the decision is clearly erroneous, leaving this court with a definite and firm impression that a mistake has been made." *Dillard*, 158 S.W.3d at 297.

 Defendant first claims the trial court erred in denying his motion to suppress because he was seized in violation of the Fourth Amendment. "The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures." *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004); U.S. Const. amend. IV. Defendant was pulled over for a routine traffic stop because he made an improper left hand turn. "A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment." *Sund*, 215 S.W.3d at 723. However, such a traffic stop does not justify indefinite detention. *Id.* "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Id.* (quoting *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004)). "A reasonable investigation ... may include 'asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose.'" *Barks*, 128 S.W.3d at 517 (quoting *State v. McNaughton*, 924 S.W.2d 517, 523 (Mo.App. W.D.1996); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994)). Once a traffic stop is completed, absent a patrolman having an objectively reasonable suspicion that the driver is involved in criminal activity based on specific, articulable facts, the driver needs to be permitted to leave. *Barks*, 128 S.W.3d at 517.

 Defendant asserts that the traffic stop was completed when Officer Walthall received his license and vehicle title and ran Defendant's information through the computer to check for warrants. He says, at this point, Officer Walthall should have immediately given Defendant his ticket and allowed him to proceed.[3] Because Officer Walthall did not do so, and because

---

**3.** Officer Walthall testified that he intended to write Defendant a ticket.

there were no specific facts articulated by him that would support a reasonable suspicion that Defendant was engaged in criminal activity, Defendant claims he was illegally seized.

■ However, the record does not support Defendant's assertion that the traffic stop was concluded. Even though Officer Walthall had received Defendant's license and vehicle title and had run Defendant's name through the computer, the traffic stop was not completed because Officer Walthall had not yet issued Defendant a traffic citation and had not yet returned Defendant's license and vehicle title. *Compare Barks*, 128 S.W.3d at 514 (officer issued a traffic citation); *Granado*, 148 S.W.3d at 311 (patrolman gave driver a written warning and told him he was "free to go"); *State v. Slavin*, 944 S.W.2d 314, 316 (Mo.App. W.D.1997) (officer told driver he would receive a warning). Nothing in the record suggests that the time Officer Walthall took after running Defendant's information through the computer was unreasonable or that Officer Walthall was engaged in unreasonable activity during this time. Instead, with the traffic stop still in progress, while conducting his reasonable investigation of the traffic violation, Officer Walthall asked Defendant to step out of the vehicle. During a traffic stop an officer is allowed to order a driver out of the vehicle without violating the Fourth Amendment, regardless of whether he suspects foul play or danger. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977); *State v. Reynolds*, 753 S.W.2d 1, 2 (Mo. App. E.D.1988). Defendant was then searched by Officer Walthall. Under these particularized facts, Defendant was not illegally seized when he was asked to, and did in fact, exit his vehicle and was searched.

■ We next need to decide whether, as Defendant asserts, the motion to suppress the methamphetamine evidence should have been granted because the search of Defendant's person violated the Fourth Amendment. Generally, "searches conducted outside of the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *State v. Middleton*, 43 S.W.3d 881, 884 (Mo.App. S.D.2001). (internal quotations omitted). One such exception is "a protective search by officers for weapons upon less than probable cause to arrest." *Id.* at 885. The State contends its search was justified under this exception.

■ As previously discussed, Defendant was asked to get out of his vehicle pursuant to a valid traffic stop. "When a valid stop has been made, officers may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed." *State v. Haldiman*, 106 S.W.3d 529, 533 (Mo.App. W.D.2003). *See also Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Haldiman*, 106 S.W.3d at 533 (quoting *State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996)). Defendant claims Officer Walthall did not have a "reasonable, particularized suspicion" that Defendant was armed and, therefore, the pat down search violated the Fourth Amendment. We disagree.

Officer Walthall testified that when he pulled Defendant over he recognized him as an individual that had been present at some residences where he, as a member of the special response team, had served search warrants. These search warrants

were considered high risk because of the possibility of the presence of weapons and other dangerous factors at the locations to be searched. Officer Walthall testified that Defendant was present at these high risk locations "two or three times" and weapons were located during these searches. Officer Walthall said that due to his familiarity with Defendant, especially knowing that Defendant had been present where weapons were found, he feared for his own safety. It was his fear, based upon his familiarity with Defendant, which caused Officer Walthall to call for backup.

This case is similar to *United States v. Garcia*, 441 F.3d 596 (8th Cir.2006). In *Garcia*, a driver was pulled over for a traffic violation. *Id.* at 597–98. The driver told the police officer that his driver's license was suspended due to a drug-related conviction. Id. at 598. The police officer ran a computer check and discovered that the car was registered to a third person. *Id.* He then conducted a pat down search of the driver and discovered a glass pipe. *Id.* The driver claimed the pat down search violated his Fourth Amendment rights because the police officer did not have a reasonable suspicion that the driver posed a danger. *Id.* at 599. The Court disagreed and concluded that "the officer's knowledge that [driver] had an earlier drug conviction, was driving a car neither he nor his passenger owned, and was driving without a license" were sufficient facts from which the police officer could "reasonably conclude in light of his experience that criminal activity might be afoot and

[driver] might be armed and dangerous." *Id.*

In this case, unlike in *Garcia*, Officer Walthall not only knew that Defendant had a history of drug activity he also knew that Defendant was present at locations where weapons were discovered. This makes the State's case stronger than the government's in *Garcia*. The knowledge possessed by Officer Walthall of Defendant's prior activities and associations gave him a "reasonable, particularized suspicion" that Defendant may be armed. Therefore, the search did not violate the Fourth Amendment.[4]

Defendant's Fourth Amendment rights were not violated because he was seized pursuant to a valid traffic stop and the pat down search was valid because of Officer Walthall's reasonable suspicion that he may be armed and dangerous. The judgment of the trial court is affirmed.

LYNCH, C.J., and BARNEY, P.J., concur.

---

4. During the search, Officer Walthall felt what later was discovered to be a long, circular, dark colored, plastic cylinder covered with a beer bottle cooler sleeve. We need not determine whether this item meets the "plain feel" exception established by *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). *See also* *Rushing*, 935 S.W.2d at 33–34. This is because Officer Walthall never removed the item. Instead, Defendant ran away from the police officers and while he was running the item fell from his pants and was later picked up by another officer. Defendant does not challenge anything that happened subsequent to Officer Walthall's pat down search.