STATE of Missouri, Respondent,

v.

Jose M. GRANADO, Appellant.

No. SC 86192.

Supreme Court of Missouri,
En Banc.

Nov. 9, 2004.

H. Mark Preyer, Kennett, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

PER CURIAM.[1]

A highway patrolman observed Jose M. Granado's vehicle weaving on an interstate highway. The patrolman stopped Granado. After investigation, Granado received a warning and was told he was free to go. Granado thereafter refused to consent to the vehicle's search. A K–9 unit searched and found 36 pounds of marijuana in the vehicle. Granado moved to suppress the results of the improper search. The trial court overruled the motion. Granado was convicted of possession of a controlled substance with intent to deliver. Section 195.211.[2]

The results of the search should have been suppressed. The detention extended beyond the time reasonably necessary to effect its initial purpose. There was no new factual predicate for reasonable suspicion found during the period of lawful seizure that would support the search. The judgment is reversed, and the case is remanded.

## FACTS

Viewing the testimony in the light most favorable to the trial court's ruling, *State v. Carter*, 955 S.W.2d 548, 560 (Mo. banc 1997), a patrolman saw a pickup weaving outside its lane of traffic. Granado was driving, and his cousin was a passenger. After being stopped, Granado went with the patrolman to his car. When seated in the car, the patrolman noticed that Granado's breathing was labored, he "was extremely nervous," he was shaking and stuttering, "his voice was cracking," and he seemed to have a hard time "sitting still."

Granado explained to the patrolman that he and his cousin were en route from Dallas, Texas, to Memphis, Michigan, to work on a house owned by his father. He also stated that the truck was rented in Michigan and that he would drive it back to Texas alone, because his cousin was going to take the bus back to Texas. After they sat in the patrol car for several minutes, the patrolman asked Granado for the truck's registration information. Granado said the registration information was in the truck's glove compartment. The patrolman returned to the truck and requested the paperwork from the cousin. The cousin stated that the pair was traveling to Capac, Michigan, and that they would be returning to Texas later in the week.

Granado received a warning for crossing the centerline and was told he was free to go. After handing Granado his license and rental agreement, Granado got out of the patrol car and started to walk back toward the truck. Just before Granado reached the truck, the patrolman stepped out of his patrol car and informed Granado of the discrepancies in his and his cousin's statements and asked for permission to search the vehicle and its contents. Consent was denied. The patrolman said that that was fine, that was Granado's right, that the vehicle could not be moved, and that a K–9 unit would be called to come do a sniff of the vehicle. The patrolman also said that although Granado was still free to go, he could wait in the patrol car during the search. The K–9 unit was summoned. The patrolman also asked Granado's cousin for permission to search the vehicle, and the cousin, who seemed nervous, deferred to Granado as to whether to give permission for the search. Once the cousin was

1.  This Court transferred this case after opinion by the Court of Appeals, Southern District, authored by the Honorable Phillip R. Garrison. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without further attribution.

2.  All statutory references are to RSMo 2000 unless otherwise indicated.

outside the vehicle, the patrolman observed him pacing back and forth.

An officer arrived with the K–9 unit. A hard plastic cover that was split into a front section and a rear section covered the bed of the truck. After the dog indicated that he smelled something in the bed cover, the officer opened the unlocked rear compartment and found clothing and luggage. By using the ignition key he obtained from Granado, the officer then unlocked the front compartment. In the front compartment was a black duffel bag containing approximately 36 pounds of marijuana packaged in vacuum-sealed bundles. Both Granado and his cousin were arrested.

At trial, the cousin admitted that the marijuana found in the vehicle belonged to him. He testified at length regarding how he acquired the drugs, packaged them, and intended to sell them when he arrived in Michigan. He stated that he loaded the black duffel bag into the truck himself before they left Texas and that Granado did not know anything about the drugs he was transporting.

The trial court overruled Granado's motion to suppress.

## STANDARD OF REVIEW

██ This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defers to the trial court's determinations of credibility. *State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). In reviewing the evidence, the Court considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *State v. Clemons,* 946 S.W.2d 206, 218 (Mo. banc 1997). The trial court's ruling will be reversed only if clearly erroneous. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998).

## DISCUSSION

The traffic stop was complete at the time the patrolman initiated the search. Any search thereafter required new and articulable suspicion that Granado had committed a crime.

The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures. U.S. Const. amend. IV. As this Court recently observed in *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004): A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment. So long as the police are doing no more than they are legally permitted and objectively authorized to do, the resulting stop or arrest is constitutional. The fact that the police may detain a person for a routine traffic stop does not justify indefinite detention, however. The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation.

██ In this case, the purpose of the traffic stop was completed prior to the search. Granado committed a traffic violation, was lawfully stopped by the patrolman, and produced a valid license and registration. The patrolman checked Granado's record, gave him a written warning and informed Granado that he "was free to go." The purpose of the stop, to investigate a traffic violation, was satisfied as soon as Granado stepped out of the patrol car. Once these steps were completed, the patrolman was required to allow Granado to proceed without further questioning unless specific, articulable facts created an objectively reasonable suspicion that the individual was involved in criminal activity. *Barks* at 517.

There is nothing in the record showing the patrolman had a reasonable suspicion

that Granado was engaged in criminal activity beyond the traffic stop. The patrolman testified that there was nothing that Granado did "in walking back to the patrol car that caused [me] to think that he was committing a crime." He also testified that, other than the fact that Granado was acting "irregular," there was nothing "that he did once he sat down in [the] patrol car that caused [me] to think that [Granado] was committing a crime." Defense counsel asked, "When you told him he was free to go, was there anything else that you needed to do for the traffic stop?" The patrolman replied, "No, sir." He also stated that Granado "didn't do anything new" or commit any crimes when returning to his vehicle from the patrol car and did nothing else that "create[d] an articulable fact that he was involved in some criminal activity." The patrolman acknowledged that his purpose was accomplished at the time he finished his investigation into the traffic stop.

■ The basis for the reasonable suspicion must arise within the perimeters of the traffic stop itself; suspicions based upon answers to questions asked after the stop is completed are irrelevant to the determination of whether specific, articulable facts supported a reasonable suspicion of criminal activity and provided a justification for further questioning once the traffic stop was completed. *Barks* at 517.

The State argues that the patrolman had the right to search Granado's vehicle based on his suspicious behavior during the traffic stop and the possible inconsistencies in his and his passenger's statements. If the search request occurred prior to handing Granado the written warning and telling him that he was free to go, the Court might agree; however, he did not do so. That Granado and his cousin appeared nervous does not, alone, give rise to reasonable suspicion. *Id.* No specific, articulable facts developed between the time Granado got out of the patrol car and returned to his truck that justifies detaining Granado to ask him further questions.

■ Even if a law enforcement officer does not have reasonable suspicion to further detain a driver at the completion of a traffic stop, the officer may question the driver if the encounter has turned into a consensual one. So long as the person is free to leave, the officer can talk to him and is free to ask whether he has contraband on his person, or in his car, or in his residence. This does not mean that an officer is free to involuntarily detain a driver without reasonable suspicion under the guise of simply engaging in a voluntary conversation. *Id.* A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439–40, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

In the instant case the patrolman testified that when he requested to search Granado's vehicle, Granado "was still free to go at that time." The record reveals, however, that a reasonable person would not have felt free to leave. Granado and his passenger, both from Texas, were pulled over by a police officer on the side of a rural Missouri highway in the middle of a cold January night. Neither party was wearing a jacket, and they were surrounded by nothing but open fields. They were informed that their truck and all of their personal possessions were being detained for an indefinite period of time.

Accordingly, there is nothing in the record, after the traffic stop concluded, that would give the patrolman reasonable suspicion that Granado was engaged in criminal activity. The trial court should have

granted the motion to suppress and should not have considered the evidence seized during the search. In the absence of the seized evidence, there was insufficient evidence to support the conviction. The erroneous admission of evidence does not preclude retrial because the state may produce other evidence that cures the evidentiary insufficiency. *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998).

The judgment is reversed, and the case is remanded.

WHITE, C.J., WOLFF, STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., concur.

RUSSELL, J., not participating.