STATE of Missouri,
Plaintiff/Respondent,

v.

Bernard DICKERSON,
Defendant/Appellant.

No. ED 85215.

Missouri Court of Appeals,
Eastern District,
Division One.

May 24, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 6, 2005.

Application for Transfer Denied
Nov. 1, 2005.

Lawrence O. Willbrand, St. Louis, MO, for appellant.

Deborah Daniels, Karen Louis Kramer (co-counsel), Richard Anthony Starnes (co-counsel), Jefferson City, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Bernard Dickerson (Appellant) appeals from a judgment of conviction, claiming trial court error in denying his motion to suppress. We reverse.

*Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence is as follows. On September 9, 2003, at about 8:35 a.m., Missouri State Highway Patrol Corporal Mark Broniec (Broniec) was observing traffic on eastbound Interstate 44 near Sullivan, Missouri. Broniec saw a tan Buick pass him at a high rate of speed, followed and clocked it at approximately 76 miles per hour. He also saw the Buick drive off onto the right shoulder on one occasion, so he stopped the car and approached it.

Broniec first spoke with the driver (Driver). Broniec asked Driver for her license and if the car was a rental car, to which Driver replied it was. Broniec noticed that there was an air freshener hanging from the rear view mirror, which he thought was unusual because the car was a rental car. Broniec saw Appellant lying in the backseat sleeping. As Broniec spoke with Driver, Appellant woke up and told Broniec that he had rented the vehicle. Appellant got the rental agreement for Broniec, and Broniec asked Appellant to exit the car and produce his driver's license so that he could verify that Appellant had rented the car. Appellant presented Broniec a New York driver's license that identified Appellant.

Broniec spoke separately with Driver and Appellant about their trip. Appellant said that they had flown from New York to Phoenix two days earlier to visit Driver's cousin Sharon. Driver said that they had visited a different person, taken a different airline, and stayed a different period of time than Appellant had stated. Broniec testified that he found it suspicious that they would fly from New York to Phoenix, an area he believed was a "huge drug source area for the rest of the country," then leave within a day of arriving by driving instead of flying back.

Broniec called Corporal Gary Schwartz (Schwartz) to come to the scene. Schwartz arrived with a drug dog. Broniec said that Appellant became "extremely nervous" upon the arrival of Schwartz and the dog. Broniec said that Appellant tried to grab his license out of Broniec's hand before Broniec was through with it, raising Broniec's suspicion even more. After processing the warning for speeding,[1] Broniec explained the warning to Driver, giving both Driver and Appellant their licenses back and telling Driver to drive carefully. Appellant and Driver started to get back in the car. Broniec asked them if they had anything illegal in the car, to which they responded "no." Broniec then asked for their consent to search the car, which they denied. At that point, Broniec and Schwartz decided to have the drug dog walk around the car. The dog alerted on the trunk of the car, and a subsequent search of the trunk revealed 16–17 pounds of marijuana wrapped up in some pajamas. Driver said that the pajamas belonged to her. Appellant's clothes were in a backpack next to the marijuana. At that point, Appellant and Driver were arrested.

On July 12, 2004, after trial, Appellant was found guilty of possession with intent to distribute. This appeal follows.

*Point on Appeal*

Appellant claims that the trial court erred in denying his motion to suppress the evidence relating to the marijuana "over [his] objections" because it was only after the traffic stop proceedings had been terminated that Broniec asked if they had

---

1. Broniec testified that he issues a warning rather than a ticket when the speeding is not excessive.

anything illegal and then detained them for a canine search and subsequent seizure. Appellant maintains that this search and seizure was in violation of his constitutional rights.

*Preservation and Standard of Review*

The State maintains that Appellant's point only raises a claim regarding the denial of his motion to suppress, and not the denial of his objection to the court's consideration of the evidence upon submission of the case. However, Appellant's point also states "over Defendant's objections." Thus, Appellant's point is sufficient to preserve the issue.

■■■ We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling and defer to the trial court's determinations of credibility. *State v. Granado,* 148 S.W.3d 309, 311(Mo.banc 2004). In reviewing the evidence, we consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *Id.* The trial court's ruling will be reversed only if clearly erroneous. *Id.*

*Discussion*

■■■ Once the investigation of a traffic stop is concluded, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. *State v. Barks,* 128 S.W.3d 513, 517 (Mo.banc 2004); *State v. Watkins,* 73 S.W.3d 881, 883 (Mo.App. E.D.2002).

*Granado,* recently handed down by our state's Supreme Court, is on point to the instant case. In *Granado,* a highway patrolman observed Jose M. Granado's (Granado) vehicle weaving on an interstate highway. *Id.* at 310. The patrolman stopped Granado. After investigation, Granado received a warning and was told he was free to go. The patrolman then asked Granado if he could search his vehicle. Granado refused to consent to the vehicle's search. The patrolman had a K-9 unit search anyway and found 36 pounds of marijuana in the vehicle. *Id.* at 311. Granado moved to suppress the results of the improper search. The trial court overruled the motion. Granado was convicted of possession of a controlled substance with intent to deliver. On appeal, the Supreme Court held that the results of the search should have been suppressed, because the detention extended beyond the time reasonably necessary to effect its initial purpose, and there was no new factual predicate for reasonable suspicion found during the period of lawful seizure that would support the search. *Id.* at 312.

■■ In the instant case, after issuing Driver a warning Broniec returned Driver's and Appellant's driver's licenses. Broniec told Driver to drive safely. At this point the traffic stop had concluded, and Broniec articulated no new factual predicate for reasonable suspicion found during the period of lawful seizure that would support the search. The State maintains that during the stop, Appellant had acted nervous and he and Driver had given conflicting accounts of their activities. However, in *Granado,* the patrolman also had noted discrepancies given by Granado, who was the driver, and his cousin who was a passenger, and that Granado was very nervous. *Id.* at 312. In *Granado,* the patrolman testified that when he requested to search Granado's vehicle, Granado was still free to go at that time. The facts in the instant case are the same. The *Granado* Court found that a reasonable person would not have felt free to leave in that situation. *Id.* So long as a person is free to leave, an officer can talk to him, and is free to ask whether he has contraband on his person or in his car;

however, such does not mean that an officer is free to involuntarily detain a driver following a traffic stop without reasonable suspicion under the guise of simply engaging in a voluntary conversation. *Barks,* 128 S.W.3d at 517. This is precisely what happened in the instant case.

Broniec's seizure of the marijuana was illegal. The trial court should have granted Appellant's motion to suppress and should not have considered the evidence seized during the search. Appellant's point on appeal is granted.

In the absence of the seized evidence, there was insufficient evidence to support the conviction. The judgment of the trial court is reversed.

GARY M. GAERTNER, SR., P.J., and BOOKER T. SHAW, J., concur.