STATE of Missouri, Respondent,

v.

Kerstin SUND, Appellant.

No. SC 87747.

Supreme Court of Missouri,
En Banc.

Jan. 9, 2007.

N. Scott Rosenblum, Michael A. Gross, Joseph F. Yeckel, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

Ms. Kerstin Sund was convicted by a jury of drug trafficking in the second degree in violation of section 195.223.7,

RSMo Supp.2005,[1] based upon the discovery of marijuana in the trunk of a rental car she was driving through Missouri. Ms. Sund claims the trial court erred in denying her motion to suppress this evidence and in permitting it to be admitted at trial because it was the fruit of her unlawful seizure.

This Court agrees that the police officer's demand that Ms. Sund and her companion let him search the trunk of their car or he would detain them while they waited for the police dogs, even though the traffic stop was concluded and despite the admitted lack of reasonable suspicion of criminal activity, constituted an unlawful detention. Accordingly, the marijuana found in the trunk should not have been admitted. The judgment is reversed, and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At about 10:45 p.m. on the evening of February 27, 2003, Ms. Sund and Kahlila Wolfe were driving on Interstate 44 on their way east when they were stopped by Officer William J. Knittel, Jr., as they passed through Eureka, Missouri. The officer later explained that he had observed their vehicle drift onto the dashed white line dividing one lane of traffic from another and wanted to check that the driver was not intoxicated or falling asleep. Ms. Sund was driving, and Ms. Wolfe was in the passenger seat.

After approaching the vehicle, the officer asked Ms. Sund for her driver's license and the vehicle registration. She gave him her license and a car rental agreement. Before returning to his patrol car to run a computer check on her license, Officer Knittel asked Ms. Sund a series of questions to determine whether she was intoxicated or sleepy and determined that she was neither. He returned to his vehicle and ran a check on Ms. Sund's license, which showed no outstanding violations. He then noticed the name on the rental agreement was not Sund, but Wolfe. At his request, Ms. Sund's passenger showed him her license and confirmed that the rental agreement was in her name.

Officer Knittel then asked Ms. Sund to join him in his patrol car. Once in the patrol car, he informed Ms. Sund that he was going to issue her a warning ticket. While he filled out the warning ticket and the requisite racial-profiling form, and while waiting for the results on a computer check of Ms. Wolfe's license and the rental car's license plate registration (which, when returned, showed no problem with the license or registration), the officer asked Ms. Sund questions about herself and the details of the two women's trip. She told him that she is a citizen of Sweden but was living in the United States on a visa.[2] She also told him that she and Ms. Wolfe were traveling east to assist a friend to prepare for a wedding.

Once the results of the computer checks returned, Officer Knittel left the patrol car to return Ms. Wolfe's license. Ms. Sund remained in the patrol car. Before returning the license, the officer also questioned Ms. Wolfe about the details of the women's trip. She responded consistently with Ms. Sund's answers. He then motioned for Ms. Sund to exit the patrol car. At that point, fifteen to twenty minutes had passed since he had originally stopped Ms. Sund and Ms. Wolfe. He completed the traffic stop by telling Ms. Sund to "be

---

1. Unless otherwise specified, all subsequent statutory references are to RSMo Supp.2005.

2. At the time of the stop, Ms. Sund resided in New York. Ms. Wolfe was a resident of Arizona.

careful," returning her license, and handing her the warning ticket, which cited her for a traffic infraction[3] of improper lane usage. *See* sec. 304.015.5.

As Ms. Sund was walking back to the vehicle in which Ms. Wolfe was still sitting, Officer Knittel asked Ms. Sund if he could search the vehicle and all its contents. Ms. Sund replied, "sure." When the officer asked Ms. Wolfe to pop open the trunk, however, she asked him what was going on. He told her that he believed Ms. Sund had lied to him (a statement that he later testified was based on "pure speculation") and that "interstate highways are used to conceal drugs, weapons, people and other illegal things." Officer Knittel then specifically asked Ms. Wolfe if she would give him consent to search and again asked her to pop open the trunk. Neither Ms. Wolfe nor Ms. Sund was willing to open the trunk for the officer.

The officer then gave the women a choice to consent to his searching the trunk or to wait for about forty minutes until a canine unit arrived to conduct the search in his stead. Only then did Ms. Wolfe consent and open the trunk. Upon searching the trunk, the officer found a partially opened duffel bag containing approximately seventy pounds of marijuana. He arrested both women, who were subsequently indicted by a grand jury for drug trafficking in the second degree, a class B felony.

▮ Ms. Sund filed a motion to suppress the evidence seized during the search of the vehicle, which was overruled. She objected, without success, to admission of that evidence at trial.[4] The jury found Ms. Sund guilty of drug trafficking in the second degree. After denying Ms. Sund's motion for judgment of acquittal notwithstanding the verdict or new trial, the trial court sentenced Ms. Sund to five years imprisonment, but suspended execution of the sentence and ordered that she spend 90 days in jail, after which she would begin a five-year probationary period.

Ms. Sund contends on appeal that the trial court erred in admitting the marijuana because the officer unlawfully detained her without reasonable suspicion after completing the traffic stop by telling Ms. Wolfe and her that they had to either consent to his searching the trunk or wait for a canine unit to arrive to conduct the

---

3. An infraction in Missouri "does not constitute a crime." Sec. 556.021.2, RSMo 2000. Rather, it is a violation of state law that does not even rise to the level of a misdemeanor. *See* sec. 304.015.7.

4. This Court notes at the outset that Ms. Sund adequately preserved this claim by filing a motion to suppress the evidence and objecting to its admission at trial and that she had standing to do so. Indeed, even were there merit to the State's questionable contention that a permissive driver of a rental car such as Ms. Sund lacks a reasonable expectation of privacy in the vehicle that was searched, *compare United States. v. Best*, 135 F.3d 1223, 1225 (8th Cir.1998) and *United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir.2006) (both holding that an individual not listed on a rental agreement has reasonable expecta-

tion of privacy in and standing to challenge a search of a car of which the individual is a permissive driver) *with State v. Sullivan*, 935 S.W.2d 747, 755 (Mo.App. S.D.1996) (holding that defendant-driver lacked standing to challenge search of vehicle because he was not the owner thereof) and *State v. Toolen*, 945 S.W.2d 629, 632 (Mo.App. E.D.1997) (defendant-driver has standing to challenge search of rental car only if he shows "he possessed the car with the consent of the owner or someone with the authority to grant possession"), Ms. Sund has standing here because the search of the vehicle was a fruit of her wrongful seizure and detention. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Shoults*, 159 S.W.3d 441, 446 (Mo.App. E.D.2005), and cases discussed *infra*.

search, thereby negating the consensual nature of their resulting agreement to allow the search.[5]

## II. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). This Court defers to the trial court's factual findings and credibility determinations, *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998), and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *State v. Clemons*, 946 S.W.2d 206, 218 (Mo. banc 1997). Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*. *Rousan*, 961 S.W.2d at 845.

## III. DISCUSSION

The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures. U.S. Const. amend. IV. A "seizure" occurs when the totality of the circumstances surrounding the incident indicates that "a reasonable person would have believed that he was not free to leave." *State v. Werner*, 9 S.W.3d 590, 600 (Mo. banc 2000).

A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). "The fact that the police may detain a person for a routine traffic stop does not justify indefinite detention, however. The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *Id.*

Officer Knittel testified that he stopped the vehicle driven by Ms. Sund because it crossed the white dotted line in violation of the statutory requirement that cars remain in a single lane, sec. 304.015.5(1), and because he wanted to ensure the driver was not intoxicated or asleep. Assuming this was the reason for the stop, the State agrees that the traffic stop was complete when the officer handed Ms. Sund the warning ticket, returned her license, and told her to "be careful." *See Barks*, 128 S.W.3d at 517.

At that point the officer was required to allow Ms. Sund "to proceed without further questioning unless specific, articulable facts created an objectively reasonable suspicion that the individual was involved in criminal activity." *Granado*, 148 S.W.3d at 311. But Officer Knittel admitted that when he asked Ms. Sund whether he could search the vehicle after returning her license and telling her to be careful, he did not have reasonable suspicion of criminal activity that would have justified continued detention or a search of the vehicle.

Rather than relying on reasonable suspicion, the State claims that the officer's conduct at that point was permissible because the encounter had become consensual. The State is correct that police officers are free to question an individual, even without reasonable suspicion of criminal activity, if the encounter is consensual. *Id.* at 312. But, this "does not mean that an officer is free to involuntarily

5. Ms. Sund also argues that (1) the officer unlawfully detained her longer than necessary to complete the traffic stop without reasonable suspicion to do so, and (2) as a result of the unlawful detention, any consent to search

the vehicle was not freely and voluntarily given. Because Ms. Sund's claim based on unlawful detention after the completion of the traffic stop is dispositive, this Court need not address these two claims.

detain a driver without reasonable suspicion under the guise of simply engaging in a voluntary conversation." *Id.* An encounter is consensual only if "a reasonable person would feel free to disregard the police and go about his business." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (citations omitted). Thus, the question is whether the officer's conduct would cause a reasonable person in Ms. Sund's position to believe she was not free to leave.

■■■■ To answer that question, a court must consider the totality of the circumstances surrounding the encounter, *Granado,* 148 S.W.3d at 312, by engaging in a "careful, conscientious appraisal . . . of all the evidence that bears" on the claim. *State v. Hester,* 425 S.W.2d 110, 114 (Mo. 1968). "As a rule, a motorist who is involuntarily stopped by a law enforcement officer, for whatever reason, is going to be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so." *State v. Taber,* 73 S.W.3d 699, 706 (Mo.App. W.D.2002), *citing Berkemer v. McCarty,* 468 U.S. 420, 436, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). For this reason, while an "officer does not need to inform a suspect that he or she is free to leave the scene in order for the encounter to become consensual . . . that option must be apparent from the circumstances." *State v. Shoults,* 159 S.W.3d 441, 446 (Mo.App. E.D.2005).

■■ As noted, the encounter began when Ms. Sund was stopped for an extremely minor traffic violation—the officer said he saw the driver's side tires briefly touch the white dotted line dividing the lanes of the road and that this caused him concern that the driver might be intoxicated or falling asleep. Although he later testified that this concern was assuaged in the initial moments of the stop, Officer

Knittel nonetheless extended the stop so that it lasted for a total of fifteen to twenty minutes. During this time, he questioned both women at length about the details of their trip and other background information that was unconnected with the purposes of the traffic stop.

It was only after the traffic stop was concluded that the officer asked to search the vehicle and its contents. After some initial back and forth between the officer and the women as to whether he could conduct a search, the women refused to open the trunk. In fact, the officer gained access to the trunk only by threatening to call the dogs to come sniff the car if the women failed to open it, a process that could take forty minutes.

While the State says that this demand that the women either consent or wait for the dogs did not constitute a detention, that is not the case. Officer Knittel himself made it clear he would not have let the women leave, testifying that his statement about having a canine unit conduct the search "meant that if [Ms. Sund and Ms. Wolfe] didn't consent, they would wait . . . till the canine unit arrived." As this Court has recognized more than once, the circumstances of a stop may be such that a reasonable person would not feel free to leave while the officer waited for the canine unit to arrive. In *State v. Granado,* 148 S.W.3d at 312, this Court held that a "reasonable person would not have felt free to leave" where defendant and his passenger were from out of state, had been pulled over on "a rural Missouri highway in the middle of a cold January night . . . [and] informed that their truck and all of their personal possessions were being detained for an indefinite period of time" to facilitate a canine search. *Accord, State v. Sanchez,* 178 S.W.3d 549, 555 (Mo.App.

W.D.2005).[6]

Here, too, considering the totality of the circumstances, a reasonable person in Ms. Sund's and Ms. Wolfe's position would not have felt free to leave at the time that they opened the trunk in response to the officer's demand that if they did not do so he would call the canine unit to come search. It was nearly 11:00 p.m. on a cold night in late February. The two women were traveling alone on an interstate highway running through a rural area of Missouri. Neither was from Missouri, and in fact, Ms. Sund was visiting the United States from Sweden. They had nowhere to go and would have had to abandon their rented car and their possessions if they did leave. The encounter was not consensual, but constituted a detention that was unreasonable because the officer did not have reasonable suspicion of criminal activity.

 It was only through Ms. Sund's illegal detention that the officer was able to gain access to the trunk and its contents. The evidence found in the trunk must, therefore, be suppressed, for "evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree." *State v. Miller*, 894 S.W.2d 649, 654 (Mo. banc 1995). *Accord, United States v. Mosley*, 454 F.3d 249, 253 (3d Cir.2006) (passengers in a car illegally stopped can "seek to suppress the evidentiary fruits of that illegal seizure under the fruits of the poisonous tree doctrine"); *United States v. Pulliam*, 405 F.3d 782, 787 (9th Cir.2005) (defendant has standing to seek to suppress evidence "that is in some sense the product of his unlawful detention"); *United States v. Green*, 275 F.3d 694, 699 (8th Cir.2001) (defendant

lacked interest in car "that would enable him to directly challenge the search," but he could "seek to suppress evidence as the fruit of his illegal detention").

## IV. CONCLUSION

The totality of the circumstances surrounding the encounter between Officer Knittel and Ms. Sund show that the officer illegally seized Ms. Sund. Because the marijuana admitted as evidence at trial was discovered as a direct result of that illegal detention, it must be excluded as fruit of the improper detention. The trial court erred in overruling Ms. Sund's motion to suppress and in overruling Ms. Sund's objection to the admission of this evidence at trial. The trial court's judgment is reversed, and the case is remanded.

All concur.

6. *Sanchez* held that "no reasonable person would have believed" defendant and his passenger were free to leave when they were both from out of state, they had been pulled over on a Missouri interstate highway, "the temperature was over one hundred degrees, and their car and all of their personal possessions were being detained" for purposes of a canine search. 178 S.W.3d at 555.