**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jodi Lynn ABERCROMBIE, Defendant–Appellant.**

No. 27814.

Missouri Court of Appeals,
Southern District,
Division Two.

May 21, 2007.

Motion for Rehearing or Transfer to Supreme Court Denied June 11, 2007.

Application for Transfer Denied Aug. 21, 2007.

190

JEFFREY W. BATES, Chief Judge.

In October 2003, Jodi Lynn Abercrombie (Defendant) was convicted after a bench trial of committing the class C felony of possessing methamphetamine. *See* § 195.202.[1] The court suspended imposition of sentence and placed Defendant on three years probation. In June 2006, Defendant's probation was revoked for stealing, and she was sentenced to three years imprisonment. The court suspended execution of sentence and placed Defendant on two years probation. On appeal, Defendant claims the trial court erred in denying her motions to suppress and admitting in evidence two baggies of methamphetamine that had been hidden on Defendant's person. Defendant surrendered the drugs to police after her arrest for possessing marijuana, which had been discovered during an earlier, warrantless search of her car. Defendant contends the

methamphetamine should have been excluded because it was discovered only after her illegal seizure by police following a traffic stop. We affirm.

## I. Standard of Review

At a suppression hearing, "[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled." § 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). Therefore, the State bore the burden of production and persuasion to show that the warrantless search of Defendant was valid. *State v. Hampton*, 959 S.W.2d 444, 450 (Mo. banc 1997).

■ On appeal, we only determine whether the trial court's decision to deny the motion to suppress is supported by substantial evidence. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003). In reviewing that ruling, we consider the record made at the suppression hearing and the evidence introduced at trial. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). The complete record before the trial court is viewed in a light most favorable to the ruling on the motion to suppress. *State v. Jackson*, 186 S.W.3d 873, 879 (Mo.App. 2006). We disregard all evidence and inferences unfavorable to the court's ruling. *State v. Galazin*, 58 S.W.3d 500, 507 (Mo. banc 2001); *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998).

■ We will not reverse the trial court's ruling unless the decision is clearly erroneous, leaving this Court with a definite and firm impression that a mistake has been made. *State v. Williams*, 97 S.W.3d 462, 469 (Mo. banc 2003); *State v. Newberry*, 157 S.W.3d 387, 397–98 (Mo.

---

1. All references to statutes are to RSMo (2000). Methamphetamine is a schedule II controlled substance. *See* § 195.010(5); § 195.017.4(3)(b).

App.2005). We review issues of law *de novo*. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). We give deference, however, to the trial court's factual findings and credibility determinations. *Id.* For this reason, "[t]he trial court may not be reversed if its decision is plausible, even if we are convinced that we would have weighed the evidence differently if sitting as the trier of fact." *State v. Davalos*, 128 S.W.3d 143, 147 (Mo.App.2004). The evidence and inferences contained in the complete trial record, viewed in the light most favorable to the trial court's ruling on the motion to suppress, are summarized below.

## II. Factual and Procedural Background

On May 31, 2002, Sullivan police officer Shannon Gregory (Officer Gregory) was on duty. Sometime between midnight and 2:00 a.m., Officer Gregory received a dispatch that reported possible narcotics activities at the Sullivan Wal–Mart. According to the dispatch, the police department had received a telephone call from Wal–Mart reporting that two white, slender females with light-colored hair had been in the store purchasing components to manufacture methamphetamine. The caller described the vehicle these persons were driving as a "blue over silver" Cavalier with Missouri license plate number 918–PYE. Officer Gregory went to Wal–Mart, but he was unable to locate the car in the immediate vicinity.

On June 1, 2002, Officer Gregory was on duty again. At 1:43 a.m., he observed a "blue over silver" Cavalier with Missouri license plate number 918–PYE. After calling in the license and determining that it was supposed to be on a 1986 Ford automobile, he activated his emergency lights and stopped the car. Defendant was the only person in the vehicle. She remained inside her car, and Officer Gregory stood on the shoulder. Defendant was not acting unusually nervous, and Officer Gregory saw nothing suspicious or illegal in the vehicle. He asked for Defendant's license and registration. She produced her driver's license and a bill of sale for the vehicle dated April 27, 2002. Officer Gregory gave Defendant a summons for failing to register her vehicle, and she signed it. At that point, the traffic stop ended. Defendant was free to go, although Officer Gregory did not tell her so in "those exact words." This part of the encounter had lasted about three minutes.

Because the car Defendant was driving matched the description of the vehicle identified in the Wal–Mart dispatch from the prior evening, Officer Gregory was concerned. He decided to request consent to search the car. He asked Defendant if she could step out of the car and step to the rear so he could speak with her.[2] Defendant walked back and stood on the sidewalk between her car and Officer Gregory's vehicle. Defendant was joined there by Officer Gregory and another officer who had arrived at the scene. Officer Gregory asked Defendant if she would consent to a search of her car. Defendant was told that it was her decision and that she could refuse to permit the search. She gave permission for her car to be searched.

During the search, Officer Gregory found a blue baggie containing a green, leafy substance that appeared to be marijuana inside a bag on the passenger seat. The bag also contained a spiral notebook with Defendant's name written on it. Defendant was arrested for misdemeanor possession of marijuana, patted down for

---

2. He had been trained to make this request for reasons of officer safety, in case someone became violent when an officer asked for permission to search.

weapons and taken to the Sullivan Police Department for further processing.

At the station, Officer Gregory asked that Defendant's person be searched by a female officer, Jerri Janssen (Officer Janssen). Prior to the commencement of that search, Officer Janssen asked Defendant if she had any drugs, weapons or paraphernalia on her. Defendant said she had "meth," and she reached inside her bra and removed two blue baggies.[3] Each baggie contained a white powdery substance. Field tests of the baggies were positive for methamphetamine.

After being given a *Miranda* warning, Defendant voluntarily provided police with a hand-written statement concerning this incident.[4] In the statement, Defendant said she found the two baggies containing methamphetamine in a tin can in the car as she was returning from St. Louis to her home in Sullivan. She removed the baggies from the can and placed them in her bra so she could later "confront" the person(s) who left the drugs in her car. The statement then recited that, "[w]hen I got pulled over I gave permission to search my car because I don't not [sic] have anything in my car & thought that because of what I found earlier that there was not anything."

In November 2002, Defendant was charged with committing the class C felony of possession of a controlled substance in violation of § 195.202. Subsequently, Defendant filed separate motions to suppress the evidence seized from her car and the statements she made to police based on the Fourth and Fourteenth Amendments to the United States Constitution and art. I, § 15 of the Missouri Constitution. Defendant contended the aforementioned evidence should be suppressed, pursuant to these constitutional provisions, because Defendant was illegally seized after her traffic stop was completed.

In March 2003, the trial court conducted a hearing on the motions to suppress and received testimony on these issues from Officer Gregory and Officer Janssen. After considering the evidence, the court denied the motions to suppress.

After Defendant waived her right to a jury, a bench trial was conducted in September 2003. Before any evidence was received, Defendant renewed the constitutional objections presented in her motions to suppress to preserve them for appellate review. By stipulation of the parties, the evidence at trial consisted of: (1) the testimony presented at the hearing on Defendant's motion to suppress; (2) a certified copy of Officer Gregory's police report, which included a copy of Defendant's statement to police; and (3) a certified copy of a laboratory report confirming that the powdery substance Defendant removed from her bra was .31 grams of methamphetamine. Defendant was convicted, and this appeal followed. Additional facts necessary to the disposition of the case are included below as we address Defendant's point on appeal.

## III. Discussion and Decision

The issue presented is whether the trial court clearly erred in denying Defendant's motions to suppress and admitting evidence found during the search. Defendant argues that she was illegally seized, in violation of the Fourth Amendment of the United States Constitution and art. I, § 15 of the Missouri Constitution, because: (1) the initial traffic stop was over; (2) the

---

3. The baggies Defendant removed from her bra were the same color and size as the one containing marijuana.

4. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

police did not have any new, articulable suspicion that Defendant had committed a crime; (3) the discovery of marijuana during the warrantless search of her car occurred during an illegal seizure; and (4) the subsequent discovery of the methamphetamine was "tainted" by this seizure. For the reasons explained below, we disagree.

The Fourth Amendment to the United States Constitution guarantees citizens the right to be free from unreasonable searches and seizures. *State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004). This guarantee is enforced through the exclusionary rule, a rule of evidence first created in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). *See State v. Jackson,* 186 S.W.3d 873, 879 (Mo. App.2006). In *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the protection of the exclusionary rule was extended, via the Fourteenth Amendment, to defendants in state prosecutions. *Id.* at 655, 81 S.Ct. 1684; *Jackson,* 186 S.W.3d at 879.

■■■ The requirement that searches and seizures be reasonable has been interpreted to mean that a search typically must be based on probable cause and executed pursuant to a warrant. *State v. Dillard,* 158 S.W.3d 291, 297 (Mo.App. 2005); *State v. Gantt,* 87 S.W.3d 330, 332 (Mo.App.2002). Accordingly, warrantless searches are presumptively invalid. *State v. Galazin,* 58 S.W.3d 500, 505 (Mo. banc 2001). To be valid, a warrantless search must fall within one of the recognized exceptions to the probable cause and warrant requirements. *Dillard,* 158 S.W.3d at 297; *Gantt,* 87 S.W.3d at 333.

■■■ Defendant asserts that she was illegally seized after her traffic stop was completed because: (1) she was not acting unusually nervous; (2) there was nothing illegal or suspicious in her car; (3) she was not told that she was free to leave; and (4) no reasonable person in her situation would have felt free to do so. We are unpersuaded by these assertions.

■■■ Not all personal intercourse between a police officer and an individual involves a seizure that is subject to Fourth Amendment protection. *State v. Rowe,* 67 S.W.3d 649, 654 (Mo.App.2002). "Where a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and not a seizure that requires a reasonable suspicion of criminal activity to detain the person." *Id.* at 655. As our Supreme Court explained in *State v. Granado,* 148 S.W.3d 309 (Mo. banc 2004):

> So long as the person is free to leave, the officer can talk to him and is free to ask whether he has contraband on his person, or in his car, or in his residence.... A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Id.* at 312 (citations omitted). Factors that may indicate there was a seizure include: (1) the threatening presence of multiple officers; (2) whether the officer displayed a weapon; (3) whether the officer touched or physically restrained the suspect; or (4) whether the language or tone of voice used by the officer indicated that compliance with the officer's request might be compelled. *State v. Shoults,* 159 S.W.3d 441, 446 (Mo.App.2005); *Rowe,* 67 S.W.3d at 655; *State v. Faulkner,* 103 S.W.3d 346, 355 n. 7 (Mo.App.2003). The application of these factors to the case at bar demonstrates that the trial court's decision was not clearly erroneous.

There was no evidence that Defendant was threatened by the presence of multiple officers. While there was another officer at the scene, only Officer Gregory interacted with Defendant. Defense counsel suggests that Defendant must have been involuntarily detained because Officer Gregory was six feet, one inches tall and weighed 230 pounds, while Defendant was only five feet, three inches tall and weighed 110 pounds. We reject that assertion because there was substantial evidence to support a contrary conclusion. The traffic stop was over, and Defendant had only received a ticket for failure to register her car. She did not exhibit any unusual nervousness during her conversation with Officer Gregory, and there was nothing overtly suspicious or illegal on display inside her vehicle to create undue apprehension. Defendant's hand-written statement reveals no indication that she was coerced or pressured into talking to the police. Indeed, by her own admission, she freely consented to the search of her car because she did not believe there was anything inside for police to find. The lack of compulsion or coercion disclosed by the foregoing facts is buttressed by the evidence that neither officer displayed a weapon during the encounter, and Defendant was not touched or physically restrained until after the marijuana was discovered in her car. At that point, there was probable cause to arrest her. *See State v. Childs*, 876 S.W.2d 781, 782 (Mo.App.1994); *State v. Vanacker*, 759 S.W.2d 391, 394 (Mo.App. 1988). Based on our review of the complete record, there is no indication that Officer Gregory threatened or coerced Defendant into leaving her vehicle and walking back to the sidewalk to have a conversation with him. In our view, the language used by Officer Gregory in making that request would not indicate to a reasonable person that compliance with the officer's requests might be compelled. The same is true of Officer Gregory's request for permission to search Defendant's car. She was told that it was up to her to decide whether to grant or refuse the request. Finally, an officer is not required to expressly inform a citizen that he or she is free to leave or refuse to respond to questions before the encounter can be deemed consensual. *Shoults*, 159 S.W.3d at 446; *State v. Day*, 87 S.W.3d 51, 56 (Mo.App.2002); *Rowe*, 67 S.W.3d at 655–56; *State v. Scott*, 926 S.W.2d 864, 870 (Mo.App.1996).

Based on our review of the complete record before us, there is substantial evidence to support the conclusion that the post-stop encounter between Defendant and police was consensual. "Consensual communications between an officer and a citizen involving no coercion or restraint of liberty do not constitute seizures, and thus do not invoke Fourth Amendment protection." *State v. Faulkner*, 103 S.W.3d 346, 355 (Mo.App.2003) (footnote omitted). As Defendant was not illegally seized after her traffic stop was concluded, we deny her point on appeal. In so holding, we have considered Defendant's assertion that the outcome of this appeal is controlled by *State v. Granado*, 148 S.W.3d 309 (Mo. banc 2004), and *State v. Sund*, 215 S.W.3d 719 (Mo. banc 2007), but we find both decisions factually distinguishable.

In *Granado*, Jose Granado and his cousin were traveling from Texas to Michigan in a truck when they were stopped on a Missouri interstate by a highway patrolman. The officer had observed Granado's vehicle weaving outside its lane of traffic. *Granado*, 148 S.W.3d at 310. Granado was given a warning for crossing the centerline and told that he was free to go. Before he could return to his vehicle, the patrolman asked for permission to search the vehicle and its contents. Granado re-

fused to consent. The patrolman seized Granado's vehicle and called for a K–9 unit to sniff the truck. After the dog smelled something, the truck was searched. A bag containing 36 pounds of marijuana was discovered. *Id.* at 310–11. The Supreme Court concluded that, considering all of the circumstances, the encounter between Granado and the patrolman subsequent to the traffic stop was not consensual because a reasonable person would not have felt free to leave:

> Granado and his passenger, both from Texas, were pulled over by a police officer on the side of a rural Missouri highway in the middle of a cold January night. Neither party was wearing a jacket, and they were surrounded by nothing but open fields. They were informed that their truck and all of their personal possessions were being detained for an indefinite period of time.

*Id.* at 312.

In *Sund,* Kerstin Sund and Kahlila Wolfe were traveling through Missouri on Interstate 44 in a rented car. Both women were nonresidents. The car had been rented by Wolfe, and Sund was driving. They were stopped by a highway patrolman because their vehicle drifted out of its lane of traffic. The officer asked Sund some questions and determined that she was neither sleepy nor intoxicated. A computer check of Sund's license and the car's registration revealed no problems. The officer placed Sund in his patrol car, questioned the women separately about the details of their trip and received consistent answers. The officer issued Sund a warning ticket for the infraction of improper lane usage. By that point, the traffic stop had lasted 15–20 minutes. *Sund,* 215 S.W.3d at 721–22. As Sund was walking back to her vehicle, the officer asked for consent to search the car and all of its contents. When neither Sund nor Wolfe would agree, the officer gave the women the choice of consenting to a search of the vehicle's trunk or waiting about 40 minutes for a canine unit to arrive. Wolfe agreed to open the trunk, and the officer found 70 pounds of marijuana in a duffel bag. *Id.* at 722. The issue on appeal was whether the officer's demand that Sund and Wolfe consent to a search or wait for a canine unit to arrive rendered the encounter nonconsensual. Citing *Granado,* our Supreme Court noted that "the circumstances of a stop may be such that a reasonable person would not feel free to leave while the officer waited for the canine unit to arrive." *Sund,* 215 S.W.3d at 724. Since Sund's encounter with police involved the same sort of circumstances as *Granado,* the Court held that it was nonconsensual:

> Here, too, considering the totality of the circumstances, a reasonable person in Ms. Sund's and Ms. Wolfe's position would not have felt free to leave at the time that they opened the trunk in response to the officer's demand that if they did not do so he would call the canine unit to come search. It was nearly 11:00 p.m. on a cold night in late February. The two women were traveling alone on an interstate highway running through a rural area of Missouri. Neither was from Missouri, and in fact, Ms. Sund was visiting the United States from Sweden. They had nowhere to go and would have had to abandon their rented car and their possessions if they did leave.

*Sund,* 215 S.W.3d at 725.

The case at bar is markedly different. Defendant was stopped by police in her own hometown. The traffic stop was of short duration. The request to search was made immediately after the stop concluded, and Defendant was not threatened or coerced into talking with police. Once the request to search was made, Defendant

immediately and freely consented. Her subsequent statement to police revealed no concern about doing so because she did not think there was anything in the car to be found. Finally, there is no indication from the record that Officer Gregory intended to seize Defendant's car and call in a canine unit if she refused to consent to a search. For these reasons, *Granado* and *Sund* are inapposite and do not support Defendant's argument.

In conclusion, there is substantial evidence in the complete record before us to support the trial court's decision to deny the motions to suppress and admit the challenged evidence at trial. Therefore, the court's decision is not clearly erroneous, and the judgment is affirmed.

BARNEY, and LYNCH, JJ., Concur.