STATE of Missouri, Plaintiff–
Respondent,

v.

Richard D. VOGLER, Defendant–
Appellant.

No. SD 29492.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 3, 2009.

Bryan D. Scheiderer of Rolla, MO, for Appellant.

Chris Koster, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen. of Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Presiding Judge.

Richard Vogler (Defendant) was charged by information with the class C felony of possession of methamphetamine, a controlled substance, in violation of § 195.202.[1] After a bench trial, Defendant was found guilty of that offense and sentenced to serve five years in prison. On appeal, Defendant contends the trial court erred in overruling his motion to suppress and admitting evidence that methamphetamine was found on Defendant's person during a warrantless search by a police officer. Defendant argues that the search of his person and the seizure of the controlled substance were unlawful because those events occurred after Defendant's traffic stop was completed without the officer having an objectively reasonable suspicion that Defendant had committed a crime. This Court agrees. Defendant's conviction is reversed, and the cause is remanded for a new trial.

## I. Factual and Procedural Background

■ The facts relevant to this issue were presented to the trial court via the written report and trial testimony of the arresting officer, Phelps County Deputy Sheriff Will Loughridge.[2] On April 10, 2003, Loughridge was on patrol in Newburg, Missouri. At 6:40 p.m., he observed a 1991 Cadillac make a left turn without signaling. Loughridge activated the lights on his patrol car, and the Cadillac pulled over. The traffic stop was initiated at 6:41 p.m. Defendant exited the Cadillac and asked if he needed to produce his driver's license and proof of insurance. When Loughridge responded affirmatively, Defendant handed over those documents. Loughridge told Defendant that he had been stopped for not signaling. Defendant was advised that, although he would not be issued a ticket for the violation, the officer did need to check Defendant's driving status. Loughridge instructed Defendant to take a seat back in his vehicle, and Defendant complied.

Loughridge returned to his patrol car and used the radio to inquire whether Defendant had a valid driver's license and whether there were any warrants out for his arrest. The radio check revealed that Defendant had a valid license and no warrants. Only a few minutes had elapsed since Defendant had been stopped, and he was still sitting in the driver's seat of his vehicle as instructed with the window down. Loughridge walked back to the Cadillac and stood off to the side of the open window. He handed Defendant his license and insurance card. Loughridge said nothing about the results of his radio

---

1. All references to statutes are to RSMo (2000). Methamphetamine is a schedule II controlled substance. *See* § 195.010(5); § 195.017.4(3)(b).

2. We view the facts and the reasonable inferences derived therefrom in the light most favorable to the trial court's decision to deny the motion to suppress. *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007).

check. Instead, he immediately asked if there was anything illegal in the car, such as drugs or weapons. Defendant said he did not have any of those items, and Defendant did not appear to Loughridge to be under the influence of a controlled substance. Loughridge then asked if he could search the vehicle for weapons or drugs, and Defendant agreed. He exited the vehicle and stood away from it. Loughridge asked Defendant if he had any weapons on his person. He said he did not have any. Loughridge asked if he could pat Defendant down for the officer's safety, and Defendant agreed. During the pat-down, Loughridge felt something in Defendant's pants pocket. When the officer asked what it was, Defendant said he had "a little bit of weed," which the officer understood to be marijuana. Defendant removed the substance from his pocket and gave it to Loughridge. After confirming that the substance appeared to be marijuana, Loughridge conducted a further search of Defendant's person. Loughridge looked inside of Defendant's wallet, which had been in his back pants pocket, and found a plastic baggie containing a small amount of what appeared to be methamphetamine. Loughridge placed Defendant under arrest. At this point, only seven minutes had elapsed since the initial stop occurred. Defendant was transported to the Phelps County jail.

After Defendant was charged with possession of methamphetamine, defense counsel filed a motion to suppress all of the evidence that resulted from Defendant's search. The motion alleged that Defendant's warrantless search violated the Fourth Amendment to the United States Constitution and Article I, § 15 of the Missouri Constitution. After conducting a hearing, the trial court denied the motion. The court concluded that the search of Defendant's person occurred consensually after the traffic stop had con-

cluded because a reasonable person in Defendant's position would have felt free to go. At trial, the court also overruled Defendant's objections when the State presented evidence concerning the results of Loughridge's search of Defendant's person. After Defendant was convicted and sentenced, this appeal followed.

## II. Standard of Review

At a suppression hearing, "[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled." § 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). Therefore, the State bore the burden of production and persuasion to show that the warrantless search of Defendant's person was valid. *State v. Hampton*, 959 S.W.2d 444, 450 (Mo. banc 1997). On appeal, our task is to determine whether the trial court's decision to deny the motion to suppress is supported by substantial evidence. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003). The ruling below should be reversed only if it is clearly erroneous. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). Whether the conduct at issue violates the Fourth Amendment is an issue of law that an appellate court reviews *de novo*. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007).

## III. Discussion and Decision

The only issue presented by Defendant's appeal is whether the trial court clearly erred in overruling the motion to suppress and admitting the challenged evidence at trial. Defendant contends the evidence should have been suppressed because it was the result of an unlawful search and seizure that violated the Fourth Amendment to the United States

Constitution and Article I, § 15 of the Missouri Constitution. This case, like many others arising from traffic stops, involves the inevitable tension between the efforts of law enforcement officers to enforce drug laws and a citizen's right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures. *See State v. Barks,* 128 S.W.3d 513, 516 (Mo. banc 2004); *State v. Joyce,* 885 S.W.2d 751, 752 (Mo.App.1994).[3] This Fourth Amendment right is enforced through the exclusionary rule. *State v. Kempa,* 235 S.W.3d 54, 60 (Mo.App.2007). To be reasonable, a search or seizure usually must be based on probable cause and executed pursuant to a warrant. *See State v. Dillard,* 158 S.W.3d 291, 297 (Mo.App.2005); *State v. Gantt,* 87 S.W.3d 330, 332 (Mo.App.2002). "Warrantless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with federal and state warrant requirements." *State v. Hensley,* 770 S.W.2d 730, 734 (Mo. App.1989).

■■■ "A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *Barks,* 128 S.W.3d at 516. Such a seizure, however, "may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *State v. Granado,* 148 S.W.3d 309, 311 (Mo. banc 2004). The reasonable actions taken by an officer during such a stop may include: (1) asking for the driver's license, registration and proof of insurance; (2) questioning the driver about his purpose and destination; (3) running a record check on the driver and his vehicle; and (4) issuing a citation or warning. *See, e.g., State v. Jones,* 204 S.W.3d 287, 292 (Mo.App.2006). "Once the investigation of a traffic stop is concluded, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity." *State v. Dickerson,* 172 S.W.3d 818, 820 (Mo.App.2005).

■ The trial court decided, and we agree, that the traffic stop ended when Loughridge handed Defendant his license and insurance card. At that point, the investigation of the traffic violation was over. Both Defendant and the State agree with this aspect of the trial court's ruling. It is also undisputed that, at the conclusion of the traffic stop, Loughridge was not aware of any specific, articulable facts creating an objectively reasonable suspicion that Defendant was involved in criminal activity so as to support any further detention. Defendant argues that the evidence used against him was obtained as the result of his illegal detention after the conclusion of the traffic stop. The State argues that, just as the trial court ruled, the evidence was obtained as the result of a consensual encounter between Defendant and the police.

Thus, the crux of the controversy is whether the subsequent encounter between Loughridge and Defendant was consensual. In *State v. Granado,* 148 S.W.3d 309 (Mo. banc 2004), our Supreme Court summarized the controlling legal principles this way:

> Even if a law enforcement officer does not have reasonable suspicion to further detain a driver at the completion of a traffic stop, the officer may question the

---

3. The protection provided to Missouri citizens by Article I, § 15 is coextensive with that provided by the Fourth Amendment of the United States Constitution. *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996); *State v.* *Richmond,* 133 S.W.3d 576, 579 (Mo.App. 2004). Therefore, our analysis is confined to a discussion of Defendant's Fourth Amendment claim.

driver if the encounter has turned into a consensual one. So long as the person is free to leave, the officer can talk to him and is free to ask whether he has contraband on his person, or in his car, or in his residence. This does not mean that an officer is free to involuntarily detain a driver without reasonable suspicion under the guise of simply engaging in a voluntary conversation. A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Id.* at 312 (citations omitted). All of the evidence bearing on this issue must be given a careful, conscientious appraisal. *State v. Sund,* 215 S.W.3d 719, 724 (Mo. banc 2007). As our Supreme Court also observed in *Sund,* a motorist involuntarily stopped by a law enforcement officer, regardless of the reason, will be very reluctant to leave the scene until it is perfectly clear that he or she is free to do so. *Id.* at 724.

Defendant argues that, considering the totality of the circumstances, Loughridge's conduct would have communicated to a reasonable person that he or she was not free to decline the officer's requests or terminate the encounter. This Court agrees. In the usual traffic stop, the issuance of the citation or warning at the conclusion of the encounter helps indicate to the driver that he or she may leave. Here, however, Defendant was told at the outset of the traffic stop that he was only being given a warning. Nevertheless, he was detained by Loughridge for a record check. Defendant was instructed to return to his car and remain there, which he did. While Loughridge received the results of his radio check, he never conveyed that information to Defendant or told him

he was free to go. When Loughridge returned to the Cadillac, he stood to the side of the open window and immediately asked Defendant if he had any illegal drugs or weapons in the car. Despite Defendant's denial, Loughridge asked to search the vehicle. When Defendant exited the vehicle, Loughridge immediately asked Defendant if he had any weapons on his person. Again, despite Defendant's denial, Loughridge asked to pat Defendant down. From the stop to arrest, this seven-minute encounter between Loughridge and Defendant was one seamless event. There was nothing to give a reasonable person any clear demarcation between the end of the traffic stop and the purported new, consensual encounter between officer and detainee. Therefore, we hold that the trial court clearly erred in deciding that the evidence collected from Defendant resulted from a consensual search.

The conclusion we reach is supported by *State v. Barks,* 128 S.W.3d 513 (Mo. banc 2004). There, Barks was stopped for speeding by a highway patrolman. The patrolman took Barks' license and insurance card and told him that he would be issued a citation. Barks was told to stay in his vehicle while the patrolman returned to his vehicle. The officer conducted an operator check, confirmed that Barks' license was valid and wrote out the citation. The patrolman then gave Barks the speeding ticket and explained some of the pertinent details regarding it. *Id.* at 514. The patrolman observed that Barks appeared nervous and asked if there was anything illegal in the car. *Id.* at 514–15. Barks initially said no, and the officer asked the same question again. This time, Barks said he had a weapon in the vehicle. He gave the officer permission to retrieve the weapon. Barks was told to get out of his vehicle and sit in the patrol car while the officer checked to see whether the gun was

stolen. After Barks exited the patrol car, the patrolman asked if he could search Barks' person and received permission to do so. *Id.* at 515. During that search, methamphetamine was found in some tinfoil inside an empty cigarette package in Barks' shirt pocket. *Id.* at 515–16.

On appeal, Barks challenged the admission in evidence of the seized items because he was detained after the lawful purpose of the traffic stop had concluded. *Id.* at 516. Our Supreme Court held that the initial traffic stop ended when the patrolman returned the driver's license and insurance card to Barks. *Id.* at 517. The Court also held that the patrolman was not aware of any articulable facts to support a reasonable suspicion of criminal activity to justify Barks' further detention. *Id.* Finally, the Court held that a reasonable person in Barks' position would not have felt free to leave:

> During the interrogation that occurred after the patrolman had written the traffic citation, the patrolman positioned himself by Barks' window on the driver's side of the pickup where Barks was seated, looking down at Barks. The emergency lights on the patrol car remained activated. Although the patrolman testified that Barks could have driven away after he issued the traffic citation and began asking questions, that option was not apparent from the circumstances. The patrolman did not tell Barks he was free to go. Barks testified at the offer of proof in support of his motion to suppress evidence that he never felt like he could have driven away. The conversation the patrolman maintained with Barks was constant. Considering the totality of the circumstances, a reasonable person in Barks' position would have understood the situation to be one of custody.

*Id.* Therefore, the trial court erred in admitting evidence that "was obtained by exploitation of the illegality of Barks' detention." *Id.* at 518. The circumstances of the case at bar, though not identical to those in *Barks,* are sufficiently similar to support Defendant's claim of error.

The State argues that the trial court's ruling should be upheld based upon this Court's decision in *State v. Abercrombie,* 229 S.W.3d 188 (Mo.App.2007). That argument is unpersuasive because of the significant factual differences involved. In *Abercrombie,* a law enforcement officer stopped Abercrombie's vehicle because its license plate was registered to another vehicle. She produced her driver's license and a bill of sale. The officer issued Abercrombie a summons for failing to register her vehicle which ended the traffic stop. The officer communicated to Abercrombie that she was free to go, although he did not use those exact words. *Id.* at 191. The officer asked Abercrombie to step out of her car so they could speak. While they were standing on the sidewalk, the officer asked to search Abercrombie's car. The officer said it was her decision, and she could refuse to consent. She gave permission for the search, which yielded marijuana. In a later written statement, Abercrombie confirmed that she had given permission for the search because she did not believe the vehicle contained anything illegal. *Id.* at 191–92. During a subsequent search at the police station, methamphetamine was found on Abercrombie's person. *Id.* at 192. After a conviction for drug possession, she appealed. She argued that she had been illegally seized after the traffic stop was completed. This Court held that the encounter between the officer and Abercrombie had been consensual. *Id.* at 194. While Abercrombie was not expressly told she was free to leave, there was evidence that she so understood based on other comments made by the

officer. *Id.* at 191. The discussion between them took place on the sidewalk after Abercrombie got out of her car. She was told that it was her decision whether to allow the search. *Id.* By her own written admission, she willingly gave permission for the search because she did not believe there was anything illegal in the car. *Id.* at 191–92. Based on these significant factual differences, *Abercrombie* provides no support for the State's assertion that Loughridge's search of Defendant was the result of a consensual encounter.

The totality of the circumstances surrounding the encounter between Loughridge and Defendant show that he was illegally detained after the traffic stop concluded. Because the evidence admitted at trial relating to Defendant's possession of methamphetamine was discovered as a direct result of this illegal detention, it should have been excluded. *See State v. Sund,* 215 S.W.3d 719, 725 (Mo. banc 2007). The trial court erred in overruling the motion to suppress and Defendant's objections to the admission of this evidence at trial. The judgment is reversed, and the case is remanded.

BARNEY and BURRELL, JJ., Concur.