**STATE of Missouri, Respondent,**

v.

**Zecoby Z. MOORE, Appellant.**

**No. SD 31248.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 2012.

Ellen H. Flottman, Columbia, MO, for Appellant.

Chris Koster, Attorney General and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Zecoby Z. Moore ("Moore") appeals his conviction of one count of the class B felony of possession of a controlled substance with the intent to distribute, in violation of section 195.211.[1] Moore contends the trial court erred in failing to suppress the cocaine and his confession because they were the fruit of an unlawful arrest. Finding no merit to Moore's claim, we affirm the judgment of the trial court.

### Factual and Procedural History

Viewed in the light most favorable to the verdict, the following evidence was adduced at Moore's jury trial. On March 9, 2010, a joint task force arranged a controlled buy of cocaine where a confidential informant purchased narcotics from Sylvester Tate ("Tate"). Following the controlled buy, Officer Chris Hensley ("Officer Hensley"), of the New Madrid County Sheriff's Department SEMO Drug Task Force, followed Tate's truck in an undercover vehicle. Tate eventually stopped at a gas station, parking next to a blue Chevy Impala. Officer Hensley observed Moore get out of the passenger side of the Impala

---

1. All references to statutes are to RSMo Cum. Supp. (2009), unless otherwise specified.

and walk over to the driver-side window of Tate's truck. Just a few seconds later, Moore returned to the Impala and got back in the passenger seat. Based on Officer Hensley's training and experience, he believed that a drug transaction had just taken place between Moore and Tate because of Moore's behavior and Officer Hensley's knowledge that Tate had earlier sold narcotics to a confidential informant.

Officer Hensley radioed for assistance and pulled up next to the Impala. The responding officers likewise surrounded both the Impala and Tate's vehicle. Officer Hensley went to the driver's side of the Impala. With his weapon drawn, he identified himself as a police officer and asked both Moore and the driver to show him their hands. The driver complied, but Moore "was sideways in his seat. And he had one hand stuffing something in between the seats or trying to get something in between the seats there, and another hand behind him. He was stuffing or grabbing something from behind him." Based on his training and experience, Officer Hensley believed that Moore was either trying to hide narcotics or grab a weapon. Officer Hensley seven times ordered Moore to show him his hands— getting "louder and more stern at every request." Moore, however, refused to cooperate. Officer Hensley "stuck [his weapon] a little closer" and continued to command Moore to show his hands. Eventually, Detective Chris Rataj, a detective with the Sikeston Department of Public Safety, pulled Moore from the Impala, handcuffed him, and read him his *Miranda* [2] rights. Once he was outside of the Impala, Moore was acting "real nervous, real jittery." Officer Rataj subjected Moore to a pat-down search, but did not discover anything. Nothing was found following a search of the Impala. The passenger in Tate's vehicle stated Moore and Tate completed a drug transaction prior to Detective Rataj's arrival. Detective Rataj told Moore that he knew he had something hidden on his person, and it was just a matter of getting to police headquarters and getting written permission from the chief to do a strip search.

Detective Rataj then placed Moore in the rear right section of a police van. Detective Rataj told the driver of the van that Moore had "something hid in the back of his pants or down in his crouch [sic]" based on the way he was acting. The rear of the van had a metal divider in the middle, separating someone sitting on its right side from its left side. A one-inch gap existed between the divider and the rear wall separating the holding section of the van from the driver's section. The gap was long enough for a person to put his fingers through it. Before placing Moore on the right side of the divider inside the van, Detective Rataj looked inside and saw that there were no objects in the van on either side of the divider. He then placed Moore on the right side of the divider and shut the doors.

About seven minutes later, Officer Rataj opened the door to the left side of the divider to place Robert Hester [3] inside the van. Hester started to enter, but then refused. He started acting "like a cat over water," and was saying, "Don't put me in there. Don't put me in there. It is on the floor. It is on the floor. It is not mine. It is not mine." On the floor of the van was a plastic baggie containing an off-white powder that subsequently tested positive for 5.13 grams of cocaine. The baggie was too far inside the van to have come from Hester.

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Testimony from a pre-trial hearing indicated that Hester had been a passenger in Tate's truck.

Authorities took Moore to the police station, where he confessed to purchasing five grams of cocaine from Tate, that he intended to sell the cocaine, and that he had hidden it in his buttocks.

Prior to trial, Moore's defense counsel filed a motion to suppress evidence and a motion to suppress statements resulting from the alleged illegal arrest. A hearing was held on the motions and they were overruled. At trial, Moore's counsel objected to Moore's confession being admitted as evidence and to the admission of the cocaine.

The jury convicted Moore of possession of cocaine with the intent to distribute. The trial court sentenced Moore as a prior offender to 20 years' imprisonment. This appeal followed.

Moore's sole point relied on contends the trial court erred in overruling Moore's motion to suppress the cocaine and confession, and in admitting the evidence at trial because there was no probable cause to arrest Moore based on his actions and, thus, this evidence was fruit of the unlawful arrest. To determine whether the trial court properly overruled the motion to suppress, we must determine whether the arrest was made with probable cause because the arrest was made without a warrant.

## Standard of Review

■ A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* (internal citation omitted). Whether conduct violates the Fourth Amendment is a question of law, which is reviewed *de novo. Id.*

## Analysis

■ "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *State v. Tokar*, 918 S.W.2d 753, 767 (Mo. banc 1996). " '[A] broad gulf exists between what is necessary to prove one guilty and the requirement of probable cause of a warrantless arrest ....' " *State v. Duncan*, 944 S.W.2d 225, 226 (Mo.App. W.D.1997) (quoting *State v. Moore*, 659 S.W.2d 252, 255 (Mo.App. W.D.1983)). "Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest." *State v. Clayton*, 995 S.W.2d 468, 477 (Mo. banc 1999). There is no precise test to determine whether probable cause exists; rather, probable cause is determined by the collective knowledge and the facts available to all of the officers participating in the arrest. *Id.*

■ Here, Moore argues that the officers' knowledge of the facts and circumstances "was sufficient for reasonable suspicion, and the officers had every right to pat [Moore] down" but after they did not find anything, they did not have probable cause for an arrest. We, however, find the record supports a finding that probable cause existed at the time of Moore's arrest.

■ First, the officers knew Tate had just sold narcotics to a confidential informant. Officer Hensley then witnessed what appeared to be a drug transaction between Moore and Tate as Moore walked over to Tate's truck and returned to the Impala after only a few seconds. After Officer Hensley drew his weapon and instructed Moore and the driver to show him their hands, Moore refused to comply; his hand appeared to be stuffing something in

between the seats. Officer Hensley testified that he believed Moore was trying to hide narcotics or grab a weapon. Notably, Officer Hensley, with his weapon drawn, ordered Moore *seven times* to show his hands and he failed to comply. Additionally, after Moore was pulled from the vehicle he was acting nervous and jittery. Finally, any doubt as to the presence of probable cause was dispelled by Detective Rataj's testimony that the passenger in Tate's vehicle stated Moore and Tate completed a drug transaction prior to Detective Rataj's arrival.[4]

We are unpersuaded by Moore's argument that because the pat down and search of the vehicle did not result in the finding of any contraband, there was no probable cause for his arrest. Although nothing was found in either search because Moore had hidden the baggie of cocaine in his buttocks, the officers knew Moore had one hand behind him, "stuffing or grabbing something" while he refused to comply with Officer Hensley's requests to show his hands. This, in light of the surrounding circumstances, supports a belief that Moore had hidden contraband down his pants—in a place that a simple pat-down search would not have revealed. Detective Rataj even told Moore that he knew he had something hidden on his person and was going to get a strip search authorized at the station.

Accordingly, we find the arrest was made with probable cause and, thus, the trial court did not clearly err in overruling Moore's motion to suppress. The judgment of the trial court is affirmed.

BARNEY and SCOTT, JJ., concur.

---

4. Such information, even though hearsay, may form the basis of probable cause for an arrest. *State v. Ard*, 11 S.W.3d 820, 828–29 (Mo.App. S.D.2000).